Sandra FARLEY, Plaintiff,

v.

David FARLEY, et al., Defendants.

No. 2:96–0008.

United States District Court,
M.D. Tennessee,
Northeastern Division.

Feb. 14, 1997.

Lena Ann Buck, Buck & Buck, Smithville, TN, Chantal Eldridge, Cookeville, TN, for Sandra Farley.

John Edger Acuff, Barnes & Acuff, Cookeville, TN, for David Farley.

Dianne Stamey Dycus, Michael Kevin Bassham, Office of the Attorney General, Nashville, TN, for Jane Brock, State of Tennessee.

## *MEMORANDUM*

WISEMAN, Senior District Judge.

### I. Introduction

Pending are plaintiff Sandra Farley's ('Plaintiff') objections, pursuant to 28 U.S.C. § 636(b)(1)(A) and Fed.R.Civ.P. 72(a), to a protective order entered in this case on September 27, 1996 by U.S. Magistrate Judge Juliet Griffin. These provisions allow the Court to review and revise the protective order if the order is found to be "clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A); Fed.R.Civ.P. 72(a). As a preliminary matter, the Court notes that Plaintiff's objections were timely filed on October 7, 1996—within the ten-day period after service of the order set forth in Fed. R.Civ.P. 72(a), as modified by Fed.R.Civ.P. 6(a).[1]

For the reasons set forth below, the Court, in its appellate jurisdiction in this matter, finds merit in certain of Plaintiff's objections to the scope and provisions of the protective order. Accordingly, upon reconsideration, the Court MODIFIES the protective order to permit disclosure of certain materials encompassed by the order to select individuals and witnesses. The Court DENIES, however, Plaintiff's request for an order granting access to other investigative files compiled or overseen by the individual defendants in this case.

### II. Factual History

Plaintiff claims that her former husband, David Farley, conspired with agents of the Tennessee Department of Human Services ("DHS"), now the Department of Children's

---

**1.** The ten-day filing period set forth in Rule 72(a) did not begin to run until Plaintiff was actually served with a copy of the protective order. *See* Fed.R.Civ.P. 72, Advisory Committee Notes, 1991 Amendment (noting that, in the most recent amendment to the rule, the initiation of the objections period for nondispositive orders had been moved from date of entry to date of service). Assuming that Plaintiff was served a copy of the order by mail on or about September 30, 1996, her filing of objections on October 7 was well within the ten-day period that, by federal rule, excludes intervening weekend days. *See* Fed.R.Civ.P. 6(a) ("When the period of time prescribed or allowed [by these rules] is less than 11 days, intermediate Saturdays, Sundays, and legal holidays shall be excluded in the computation.").

Services ("DCS"),[2] to remove two of her three children from her home and from her custody based upon false allegations of abuse.[3] On January 23, 1996, Plaintiff filed a civil rights action under 42 U.S.C. § 1983 against the state and several individual defendants[4] claiming that her children were removed from her care without a hearing or legal authority in violation of her constitutional rights. Plaintiff seeks to use her DCS investigation records in discovery proceedings. Specifically, Plaintiff wishes to publish the contents of her DCS file—a redacted version of which has already been supplied to her—to third parties in furtherance of her fact witness interviews in this matter. In addition, Plaintiff desires access to other DHS/DCS files compiled by or associated with the individual defendants in this case.

██ Tennessee law expressly provides that, in the interest of protecting children and their parents or guardians, it is illegal for any person to disclose or otherwise make use of DCS records except under the limited circumstances prescribed by statute. T.C.A. §§ 37–1–409(b), 37–1–612(b).[5] In recognition of this public policy, Magistrate Judge Griffin issued the following order:

Disclosure of any information produced by the Tennessee Department of Human Services ... or Jane Brock concerning their records regarding Christina Farley and David Farley, Jr., minor children, or their parents, David Farley, Sr. and Sandra Farley, or Hugh Curtiss,[6] is hereby agreed to be confidential under T.C.A. §§ 37–1–409 and 37–1–612, is hereby designated to be confidential, and shall be subject to the provisions of this agreement. Disclosure of any information derived from the documents produced shall be limited to the parties and their counsel and to such other personnel employed by the parties in the litigation of the claims in [this case].

(Sept. 27, 1996 Prot. Ord. at ¶1; Docket Entry No. 40). In a second order memorializing a teleconference between the parties, Magistrate Judge Griffin elaborated upon the effect of the underlying protective order:

The ... protective order ... precludes counsel in this case from disclosing to anyone information obtained under the protective order. Counsel may talk to fact witnesses and/or former employees of the Department of Human Services, but are, by the terms of the protective order, precluded from disclosing any information covered under the protective order.... The prohibition against such disclosure includes not only information contained in the DHS file and disclosed under the terms of the ... protective order, but also includes disclosure of information not con-

---

**2.** On July 1, 1996, all functions of the Department of Human Services relating to child welfare were transferred to a new agency, the Department of Children's Services. Act effective May 21, 1996, ch. 1079, 1996 Tenn. Pub. Acts 390 (codified at various chapters, principally chapter 5, of tit. 37, Tenn.Code Ann.).

**3.** A complete recitation of the relevant facts in this case is set forth in the Court's memorandum of June 14, 1996. (Docket Entry No.29).

**4.** By order entered June 14, 1996, this Court dismissed on Eleventh Amendment grounds Plaintiff's claims against the Department of Human Services and Jane Brock, a DHS supervisor, acting in her official capacity.

**5.** T.C.A. §§ 37–1–409(b) and 37–1–612(b) are largely the same provision, except that the former ensures the confidentiality of reports of child abuse generally while the latter governs the confidentiality of reports of child sexual abuse. T.C.A. § 37–1–409(b) provides in relevant part:
Except as otherwise provided in this part, it is unlawful for any person, *except for purposes*

*directly connected with the administration of this part*, to disclose, receive, make use of, authorize or knowingly permit, participate in, or acquiesce in the use of ... any information concerning a report or investigation of a report of harm under this part, directly or indirectly derived from the records, papers, files or communications of the department or divisions thereof acquired in the course of the performance of official duties.
T.C.A. § 37–1–409(b) (emphasis added). As indicated by statute, the disclosure of certain information is permitted for administrative purposes only. Such purposes, including, but not limited to, cooperation with schools, child welfare agencies, law enforcement agencies, and the judicial and correctional systems, are enumerated at T.C.A. § 37–1–409(e)(2). T.C.A. § 37–1–612 contains a similar disclosure provision. T.C.A. § 37–1–612(f)(2).

**6.** Plaintiff's boyfriend at the time of the DHS investigation. Plaintiff and Mr. Curtiss were married in June 1995.

tained in the DHS file. Furthermore, the Court will not alter the duty of any present or former employee of the Department not to disclose information pursuant to T.C.A. §§ 37–1–409 and 37–1–612.

(Sept. 27, 1996 Ord. at 1–2; Docket Entry No. 41).

In short, the protective order at issue in this appeal prevents Plaintiff from disclosing to third parties any information contained in Plaintiff's DHS/DCS records. Plaintiff objects to the scope of this order on two grounds: (1) that the protective order, as entered and as clarified by further order of Magistrate Judge Griffin, constitutes a prior restraint upon the dissemination of information obtained in preparation for trial in violation of the First Amendment to the Constitution; and (2) that the privilege accorded Plaintiff's file under Tennessee law need not be recognized by a district court sitting in federal question jurisdiction when Plaintiff has demonstrated an overriding need for discovery. Plaintiff proposes that this Court amend the protective order to allow publication of the contents of her DCS file to third parties, and that this Court provide access, by appropriate order, to other DCS files generated or overseen by the individual defendants in this matter.

### III. Standard of Review

Both the statute and the procedural rule allowing district court reconsideration of magistrate orders dictate that the reviewing court defer to the magistrate's discretion in refereeing discovery disputes. The standard of review under 28 U.S.C. § 636(b)(1)(A) and Fed.R.Civ.P. 72(a) prescribes that a magistrate's nondispositive pretrial orders shall not be disturbed unless "found to be clearly erroneous or contrary to law." The "clearly erroneous" standard mandates that the district court affirm the magistrate's decision unless, on the entire evidence, it "is left with the definite and firm conviction that a mistake has been committed." *Ocelot Oil Corp. v. Sparrow Industries,* 847 F.2d 1458, 1464 (10th Cir.1988) (quoting *United States v. United States Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948)). In the absence of clear error, the magistrate's order must stand.

### IV. Legal Analysis

#### A. Plaintiff's Privilege Objection

The Court considers Plaintiff's second objection first because it requires the Court to ascertain the extent to which a state law privilege applies in federal court. If the state statutory privileges discussed above must yield in a federal civil rights action, the need and indeed the propriety of a protective order becomes attenuated. Put simply, if the Tennessee statutes mandating confidentiality do not apply in this case (or apply in a more limited fashion), the scope of the magistrate's protective order may be inappropriately broad. Moreover, if the protective order must be amended to facilitate Plaintiff's prosecution of her civil rights claims, her First Amendment objections recede in significance and relevance.

 There is no constitutional inhibition to the abrogation of privileges arising under state law when a matter is heard by a federal tribunal. *Dorsten v. Lapeer County General Hospital,* 88 F.R.D. 583, 586 (E.D.Mich. 1980). Rule 501 of the Federal Rules of Evidence codifies the factors that this Court must consider in deciding whether a state law privilege blocks the discovery and/or the admissibility of certain proof:

> Except as otherwise required by the Constitution of the United States or provided by Act of Congress or in rules prescribed by the Supreme Court pursuant to statutory authority, the privilege of a witness, person, government, State, or political subdivision thereof shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience. However, in civil actions and proceedings, with respect to an element of a claim or defense as to which State law supplies the rule of decision, the privilege of a witness, person, government, State, or political subdivision thereof shall be determined in accordance with State law.

Fed.R.Evid. 501. As a general restatement of the rule, it has been noted that, in diversity actions where the federal district court sits as an alternate local forum applying local

law, the state law of privileges will control. Conversely, in civil actions arising under federal law, the presiding federal judge has greater liberty to fashion evidentiary privileges based upon "reason and experience," even when pendent state law claims are incorporated in a cause of action.[7] *See, e.g., Dorsten,* 88 F.R.D. at 586 (finding that the presence of pendent state claims does not bar the application of federal privileges in a federal question case); *von Bulow by Auersperg v. von Bulow,* 811 F.2d 136, 141 (2d Cir.1987), *cert. denied,* 481 U.S. 1015, 107 S.Ct. 1891, 95 L.Ed.2d 498 (1987) (stating that, where the evidence sought to be discovered is relevant to both the federal and state elements of a federal question matter, "courts consistently have held that the asserted privileges are governed by the principles of federal law.").

It must be noted, however, that a mechanical conception of Rule 501, turning upon the subject matter jurisdiction of the district court, was rejected by the congressional drafters of the rule. H.R. Conf. Rep. No. 93–1597, at 7–8 (1974), *reprinted in* 1974 U.S.C.C.A.N. 7051, 7100–01. It has also been disclaimed in the judicial and academic commentary construing the operation of the rule's provisions. *See generally,* 23 C. Wright and K. Graham, *Federal Practice and Procedure* §§ 5432–33 (1980). Rule 501 does not bar the application of state law privileges in federal question cases. In fact, certain elements of diversity cases are governed by federal law, and, alternatively, the interstices of federal question jurisdiction must often be filled by the appropriation of state law. *See id.* § 5433, at 853–54 nn. 4–5 (citing cases); H.R. Conf. Rep. No. 93–1597, at 7–8. Accordingly, the extent to which a state law privilege applies, if at all, in a case arising under and governed by federal law is a more subtle question than a strict diversity/federal question dichotomy would suggest or allow.

In federal civil rights actions, most courts that have taken up the issue of state privileges have concluded that state law must yield to the federal interest in full disclosure of all facts bearing upon the denial of federally-guaranteed rights. *See, e.g., King v. Conde,* 121 F.R.D. 180, 187–88 (E.D.N.Y. 1988); *Unger v. Cohen,* 125 F.R.D. 67, 69 (S.D.N.Y.1989). As one court has succinctly stated, "Because the [federal] civil rights laws are in part designed to protect individuals against illegal state action, it would be anomalous to permit state law privileges to interfere with their enforcement." *Burka v. New York City Transit Authority,* 110 F.R.D. 660, 666 (S.D.N.Y.1986); *see also Kelly v. City of San Jose,* 114 F.R.D. 653, 656 (N.D.Cal.1987). Yet, at the same time, the courts have been careful to assert that state privileges and the policies underlying them may not be ignored in applying Rule 501 to discovery disputes arising in federal question cases. *See, e.g., Smith v. Smith,* 154 F.R.D. 661, 669 n. 7 (N.D.Tex.1994); *Burke v. New York City Police Dept.,* 115 F.R.D. 220, 225 (S.D.N.Y.1987); *Lora v. Board of Ed. of the City of New York,* 74 F.R.D. 565, 569 (E.D.N.Y.1977); *Van Emrik v. Chemung Cty. Dept. of Social Services,* 121 F.R.D. 22, 25 (W.D.N.Y.1988).

Although it has been held, and this Court agrees, that only particularly strong state policies justify the withholding of evidence in federal civil rights actions, *Lora,* 74 F.R.D. at 579; *Skibo v. City of New York,* 109 F.R.D. 58, 61 (E.D.N.Y.1985), the public policy of the state of Tennessee (as embodied by T.C.A. §§ 37–1–409 and 37–1–612) that the privacy of families afflicted by child abuse should be protected and the identity of those who report child abuse should remain confidential certainly meets this threshold showing. It follows, therefore, that if this Court elects to modify the protective order at issue in this matter, it must strike a balance between Plaintiff's ability to prosecute her civil rights claim and the state's interest in ensuring that child abuse is reported, investigated, and resolved without undue fear of retribution or recrimination. *See Lora,* 74 F.R.D. at 576 ("If the state holds out the expectation of protection to its citizens, they should not be disappointed by a mechanical

---

7. Although Plaintiff has primarily grounded her claims for relief in the statutory remedy provided by 42 U.S.C. § 1983, her complaint also alleges violations of Tennessee common law that she claims entitle her to additional recovery. (Compl. at ¶¶ 37–41; Docket Entry No. 1).

and unnecessary application of [Rule 501].").
Principles of federalism and comity dictate that, should a federal court depart from a state law privilege in concluding that discovery may proceed, some deference (and in certain cases a great deal of deference) must be given to the state interests underlying the privilege. *Van Emrik*, 121 F.R.D. at 25; *Smith*, 154 F.R.D. at 669 n. 7; *Burke*, 115 F.R.D. at 225. Particularly where, as here, the state interest served by its privilege doctrine is compelling, the federal court presiding over discovery disputes is obligated to undertake a close analysis of competing state and federal law objectives "to ensure vindication of the paramount federal interest with as minimal an intrusion on the state interests as is consistent with [a] federal claim." *Van Emrik*, 121 F.R.D. at 25. The Court adopts this deferential standard [8] in seeking to fashion a rule of confidentiality, based upon "reason and experience," that reconciles the countervailing interests of the parties in this case.

Although the Court recognizes that flexibility to develop rules of privilege on a case-by-case basis is the hallmark of Rule 501, *see Trammel v. United States*, 445 U.S. 40, 47, 100 S.Ct. 906, 910–11, 63 L.Ed.2d 186 (1980), the factors that have been considered by other courts faced with the invocation of state privileges in federal civil rights actions may serve as guidelines for this Court. It must be noted at the outset, however, that the privilege rules derived by other federal courts for use in federal civil rights claims may be inapposite or at the very least unsuitable for importation into this context. *See generally Kelly*, 114 F.R.D. at 656–58 (explaining that, without formal codification of federal privilege law, the federal courts have been free to pick and choose from a wide variety of privilege doctrines in constructing

new rules for discovery and for trial that may be based upon inappropriate doctrine or modes of analysis). The Court has been unable to locate judicial authority assessing the extent to which a state statute mandating the confidentiality of child abuse records may assist defendants in blocking or hampering the discovery efforts of federal civil rights claimants.[9] It is thus necessary for this Court to reason by analogy in selecting those elements from related cases that best inform the balancing test between public and private, and state and federal, interests discussed above.

Those cases that are most factually, legally, and analytically similar to the case at bar involve attempts by plaintiffs in federal civil rights actions to obtain official information, privileged from disclosure by state statute, from public entities whose agents have been charged with denying or abridging federally-guaranteed rights. *See e.g., King*, 121 F.R.D. at 186 (personnel records of police officers alleged to have used excessive force); *Kelly*, 114 F.R.D. at 655 (internal affairs files regarding investigations of excessive force by police); *Unger*, 125 F.R.D. at 69 (complaint records against police personnel); *Lora*, 74 F.R.D. at 568 (diagnostic and referral files of public school students recommended for enrollment in special education facilities). These cases generally recommend an approach to balancing in "official information" matters that requires the reviewing court to consider: (1) the likelihood that disclosure of confidential information will discourage citizens from giving the government information; (2) the extent to which disclosure will thwart or undercut significant regulatory processes; (3) the extent to which state authorities have already waived the privilege that they assert; (4) the federal policies prio-

---

**8.** Notwithstanding the fact that, because they derogate the search for truth, privileges are to be construed as narrowly as possible. *United States v. Nixon*, 418 U.S. 683, 710, 94 S.Ct. 3090, 3108–09, 41 L.Ed.2d 1039 (1974).

**9.** There is one case, *Van Emrik v. Chemung Cty. Dept. of Social Services*, 121 F.R.D. 22 (W.D.N.Y. 1988), wherein the plaintiff and her parents sought discovery of an investigative file concerning a report of alleged child abuse, but this case is distinguishable from the instant action because

New York's statutory provision ensuring confidentiality of abuse records then in effect explicitly exempted "any person who is the subject of a report or other persons named in the report," provided that released records were properly redacted to ensure the anonymity of the reporter and anyone cooperating in the investigation. N.Y. Soc. Serv. Law § 422(4), (7) (McKinney Supp.1988). The Tennessee statutes giving rise to the protective order at issue in this case contain no such exception.

ritizing and facilitating full development of the facts in federal litigation; and (5) the plaintiff's need for disclosure. *Kelly*, 114 F.R.D. at 663 (citing *Frankenhauser v. Rizzo*, 59 F.R.D. 339 (E.D.Pa.1973)); *Lora*, 74 F.R.D. at 574–84. Although some courts have attempted to array these factors (and others) in a hierarchy, this Court finds that they form a composite analytical structure that guides application of Rule 501 to the case at bar.

■ Before continuing its analysis, however, the Court must address whether an evidentiary privilege is involved in this matter that would implicate Rule 501. While certain courts have concluded that a legislative pronouncement of confidentiality does not equate to the creation of an evidentiary privilege, *see generally American Civil Liberties Union of Mississippi, Inc. v. Finch*, 638 F.2d 1336, 1342 (5th Cir.1981); *Nguyen Da Yen v. Kissinger*, 528 F.2d 1194, 1205 (9th Cir.1975), this Court finds that "privilege" should be defined in functional terms, thereby dictating that the confidentiality statutes at issue in this case be accorded deference in the construction of a federal rule of privilege. Functionally, privilege rules have two overriding characteristics that "operate generally to prevent revelation of confidential matter within the context of a judicial proceeding," including discovery. 1 John William Strong, ed., *McCormick on Evidence* § 72.1 (4th ed.1992). First, they tend to promote some social policy that is deemed more important than the ascertainment of truth through litigation. 1 *id.* at § 72; 23 C. Wright and K. Graham, *Federal Practice and Procedure* at § 5423. Second, they "may be enforced to prevent the introduction of evidence even though the privilege is that of a person who is not a party to the proceeding in which the privilege is involved." 1 Strong, ed., *McCormick on Evidence* at § 72.1.

The social policy embodied by T.C.A. §§ 37–1–409 and 37–1–612 is quite clear. By the enactment of these statutes, the Tennessee General Assembly has asserted in no uncertain terms that the reporting, systematic examination and prevention of child abuse is of fundamental public importance. The scope of these provisions is deliberately broad, prohibiting disclosure or use of any information for unauthorized purposes whether directly or indirectly derived from DCS sources. T.C.A. §§ 37–1–409(b), 37–1–612(b). Those who breach the confidentiality of abuse records face a criminal penalty. T.C.A. § 37–1–409(f). In addition, the fact that these statutes may impinge, impede or simply halt the course of evidence gathering in a civil action has been recognized and upheld by the Tennessee courts. *See American First Mortgage Corp. v. LaJoie*, 1994 WL 666900, at *1 (Tenn.Ct.App. Nov. 30, 1994) (quashing a discovery subpoena on the basis of T.C.A. § 37–1–409); *Canaday v. Tolliver*, 1994 WL 312869, at *4 (Tenn.Ct.App. July 1, 1994) (holding that the child abuse confidentiality statutes do not permit production of DHS investigative files in a state court civil action alleging assault and battery against a minor).

It is also readily apparent, based upon a facial examination of the confidentiality statutes in question, that their primary purpose is the protection of the privacy of those who are not likely to be parties to a federal civil rights suit. The identity of the reporter, victim and alleged perpetrator of child abuse may only be divulged under the quite limited circumstances associated with the protection of the child and the prosecution and/or treatment of the alleged perpetrator. T.C.A. §§ 37–1–409(a)(2), (c) and 37–1–612(c), (d) and (g). As has been noted by other federal courts, the confidentiality of official records is generally guaranteed by statute to protect those who are regulated by a state agency rather than the agency itself. *Lewis v. Radcliff Materials, Inc.*, 74 F.R.D. 102, 104 (E.D.La.1977). Accordingly, the agency should not be permitted to use a privilege designed to ensure the welfare of those it governs when it is in possession of relevant evidence and is itself the target of a lawsuit. *Id.*

This Court has little difficulty in concluding that T.C.A. §§ 37–1–409 and 37–1–612 establish an evidentiary privilege that is entitled to deference under the principles of federalism and comity that are an implicit component of Rule 501. The confidentiality provisions at issue in this case have been

construed by the Tennessee courts to block discovery in civil actions and are clearly designed to protect the anonymity of reporters, victims and perpetrators of child abuse. Taken together, these elements fulfill the functional definition of an evidentiary privilege set forth above.

Another matter that bears discussion is the fact that, at this juncture, the state has responded to Plaintiff's request for production of documents by transmitting to her a redacted copy of her DCS investigative file. While it would be tempting to conclude that the state has waived any claim of privilege by complying with Plaintiff's discovery request, it must be recalled that the magistrate's protective order, and the Tennessee confidentiality provisions upon which it is based, precludes further dissemination of the contents of the file to any witness interviewed or deposed in connection with this matter. Plaintiff does not argue that she has been denied discovery of relevant evidence, but rather that her capacity to make use of this evidence in the prosecution of her case has been crippled by the invocation of Tennessee law. The Court takes up this issue now.

**1. Federal Interests in Disclosure and Plaintiff's Need for Disclosure**

■ In federal litigation, both the Federal Rules of Civil Procedure and the Federal Rules of Evidence are designed to facilitate discovery and admission into the factfinding process of all relevant evidence. Fed.R.Civ.P.26 authorizes a broad scope of discovery, including information not admissible at trial, if the material sought has some probative value in proving or disproving a claim or defense. Fed. R. Civ. P. 26(b)(1). The only limitation is that the information to be obtained may not be privileged. *Id.* While the privilege rule to be applied in a federal civil rights action must accord due deference to state law traditions, a critical component of the "reason and experience" informing the creation of a federal rule of privilege is the broad latitude for discovery and use of evidence granted by the procedural and evidentiary rules that govern the federal courts. *See* Fed.R.Evid. 1101(c) (stating that Fed.

R.Evid. 501 "applies at all stages of all actions, cases, and proceedings."). Fed. R.Civ.P. 26 states that all relevant evidence [10] is discoverable, while Fed.R.Evid. 402 provides that the evidence adduced in discovery is admissible at trial unless otherwise barred by federal law. As stated by the United States Supreme Court, the scheme of rules mandating wide-ranging discovery end admission of evidence serves a fundamental public interest:

> We have elected to employ an adversary system of ... justice in which the parties contest all issues before a court of law. The need to develop all relevant facts in the adversary system is both fundamental and comprehensive.... The very integrity of the judicial system and public confidence in the system depend on full disclosure of all the facts, within the framework of the rules of evidence.

*Nixon,* 418 U.S. at 709, 94 S.Ct. at 3108.

■ Without full and fair disclosure of relevant proof, the public is likely to lose confidence in the administration of justice by the federal courts. It is therefore of paramount importance that litigants be accorded the authority to seek out relevant evidence that they have been granted by the federal rules. This is particularly true in federal civil rights actions where the vindication of constitutional rights is often at stake. In the instant action, it is clear that Plaintiff should be entitled to question witnesses, including current and former DCS employees, about the contents of her file in order to develop an appropriate factual record. Although it may be argued that the facts necessary to prosecute Plaintiff's claim are already contained in her file, Plaintiff must be allowed to ascertain whether her file is indeed accurate and whether the procedures adopted by DCS in her case compare favorably to or are in accord with the practices normally observed by the agency.

**2. Chilling Effect Upon Reports of Child Abuse**

As stated above, Plaintiff has already been provided a redacted version of her DCS in-

---

**10.** Defined by Fed.R.Evid. 401 as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of [an] action more [or less] probable."

vestigative file. By order of the Court, entered December 12, 1996, (Docket Entry No. 64), Plaintiff forwarded under seal a copy of her file for this Court's review. It is apparent that the identity of the individual or individuals alleging that Plaintiff's children were harmed by her and her husband have been removed from the record. The Court finds that redaction of identifying information is a proper and sufficient means of furthering the public policy of Tennessee by protecting the anonymity of those who report child abuse. Moreover, the Court admonishes the parties that use of confidential information contained In Plaintiff's file beyond the scope of pending litigation and in violation of the terms of the Court's protective order is grounds for contempt. Because at this stage of discovery DCS has already provided for the continued anonymity of Plaintiff's accuser(s), permitting more expansive use of her file should not present any additional conflict with the law of Tennessee. This conclusion is bolstered by the fact that the confidentiality statutes at issue in this case authorize disclosure of DCS records to certain individuals and institutions upon redaction of the names of the victim, reporter and alleged perpetrator. T.C.A. §§ 37–1–409(c)–(e), 37–1–612(c)–(g).

### 3. Interference With Important Governmental Processes

Without question, the investigation and resolution of incidents of child abuse is one of the most important regulatory objectives that a state may undertake. In executing their duties, however, agents of the state [11] may not ignore the constitutional command that the targets of an investigation be accorded due process. The confidentiality granted child abuse records under Tennessee law may not be invoked as a shield with which to block scrutiny of governmental practices. The federal courts have repeated-

ly held that the interest in ensuring governmental compliance with federally-guaranteed civil rights is paramount to the state interest in confidentiality. See, e.g., Finch, 638 F.2d at 1343–44 ("The purpose of enacting § 1983 was to ensure an independent federal forum for adjudication of alleged constitutional violations by state officials; . . . there is a 'special danger' in permitting state governments to define the scope of their own privilege when the misconduct of their agents is alleged."). Although private individuals are charged with vindicating their own civil rights under § 1983, they act as "private attorneys-general" and should be assisted in discharging this function by the broad discovery mandate of federal law. Lora, 74 F.R.D. at 579 (citing Gaison v. Scott, 59 F.R.D. 347, 352 (D.Haw.1973)).

It has not been (nor may it be) claimed that the production of Plaintiff's DCS file has interfered with or hampered the conduct of investigations by agency officials. First, DCS voluntarily complied with Plaintiff's request for production of her file, the vast majority of which includes investigative summaries and internal communications between department officials. Second, as discussed in the preceding subsection of this memorandum, there are numerous provisions, enumerated within the confidentiality statutes themselves, directing that properly redacted DCS files be forwarded to those authorities responsible for the prosecution and treatment of child abuse. T.C.A. §§ 37–1–409(c)–(e), 37–1–612(c)–(g). These statutory exceptions undercut any argument that agency employees have some expectation that the manner in which they perform their duties will remain insulated from outside view. Burka, 110 F.R.D. at 665. Moreover, further dissemination of Plaintiff's file through the questioning by counsel of current and former DCS employees is fully in accord with

11. As the Court has previously held in this matter, state agencies are immunized by the Eleventh Amendment from suit under 42 U.S.C. § 1983. (Docket Entry No. 29). Because civil rights suits against state officials acting in their official capacities are merely alternative means of pleading against the state, Will v. Michigan Dept. of State Police, 491 U.S. 58, 71, 109 S.Ct. 2304, 2312, 105 L.Ed.2d 45 (1989), official capacity suits against state officers under § 1983 have also been barred on Eleventh Amendment grounds. Edelman v. Jordan, 415 U.S. 651, 663, 94 S.Ct. 1347, 1355–56, 39 L.Ed.2d 662 (1974); Alabama v. Pugh, 438 U.S. 781, 782, 98 S.Ct. 3057, 3057–58, 57 L.Ed.2d 1114 (1978); Whittington v. Milby, 928 F.2d 188, 193–94 (6th Cir. 1991). The remaining defendants in the instant action who are agents of the state have been joined in their personal capacities.

federal policy. DCS officials should expect that their actions will be examined and possibly redressed by the targets of their investigations. Where fundamental constitutional interests such as the sanctity of the parent-child relationship are involved, a comparatively full panoply of discovery techniques and fact-gathering methods should be available to the claimant.

### 4. Waiver

The waiver issue before the Court is not whether the state has waived the confidentiality of Plaintiff's file by responding to her request for its production. *See generally Lora,* 74 F.R.D. at 569 (holding that, when the records of emotionally disturbed public school students are generally forwarded to law enforcement authorities and are routinely produced in response to subpoenas, they are not afforded absolute confidentiality amounting to an evidentiary privilege). Rather, the Court must assess whether and to what extent the Tennessee law governing the confidentiality of DCS records contemplates not only their discovery but also their dissemination in the prosecution of a federal civil rights action.

Examination of T.C.A. §§ 37–1–409 and 37–1–612 reveals that DCS records may only be used in connection with the treatment of child abuse victims and the punishment of alleged offenders. The Tennessee General Assembly has expressly dictated that child abuse files are to remain confidential "except for purposes directly connected with the administration" of Tennessee's mandatory child abuse reporting laws, T.C.A. § 37–1–402–08. T.C.A. §§ 37–1–409(b), 37–1–612(b). Although approved purposes enumerated by statute include cooperation with a variety of child welfare agencies, medical and mental health personnel, law enforcement agencies

and judicial systems—cooperation with private plaintiffs in the conduct of federal civil rights litigation (or any related purpose for that matter) is not listed. T.C.A. §§ 37–1–409(e)(2), 37–1–612(f)(2). Moreover, while T.C.A. § 37–1–612(h) provides for mandatory disclosure of confidential information by "court" order in furtherance of proper disposition of a "case," it is apparent from the language of the entire subsection that the "case" referred to is a "proceeding which may be brought in any court, or before any administrative board or hearing officer for the purpose of protecting a child or children from child abuse or neglect or child sexual abuse," and the "court" is a court of competent jurisdiction to hear such a proceeding. T.C.A. § 37–1–612(h). As argued by the state in its response memorandum, this language does not encompass a civil rights action brought by the parent of a child victim against social workers and their supervisors, nor is a federal court presiding over a § 1983 action a "court" that is within the scope of the statutory scheme. (Def.'s Resp. at 4–5; Docket Entry No. 57).

In addition, notwithstanding the fact that the legislature has authorized appropriate administrative regulations to effectuate release of certain information to the judicial and law enforcement communities, T.C.A. §§ 37–1–409(e)(2) and 37–1–612(f)(2), use of this information appears clearly limited to child abuse proceedings.[12] Plaintiff has argued that an internal DCS confidentiality policy, CDM 24, which has been produced by the state supports her assertion that this Court may order discovery and dissemination of her investigative file. (Pltf.'s Mem. Supp. Mot. to Amend Ex. 1 at 1–2; Docket Entry No. 47). Once again, however, the language of this policy guideline does not incorporate

---

12. In recognition of the fact that alleged offenders have a procedural due process interest in contesting the validity of child abuse allegations, the General Assembly has also authorized administrative regulations permitting review, at the request of the alleged perpetrator, of abuse allegations by the commissioner of children's services. T.C.A. §§ 37–1–409(e)(1), 37–1–612(f)(1); Tenn. Comp. R. & Regs. title 1240, chs. 7–9–.04, .05 (1988). The Court does not consider these administrative provisions in the waiver context because their invocation does not lead to any

diminution in confidentiality. While the alleged offender may seek administrative review of the report lodged against him, in such circumstances DCS regulations grant access to abuse records only to agency officials, not the alleged perpetrator. The alleged offender is merely afforded notice that he has the right to ex parte review of his case with the possibility to appeal the commissioner's determination to an administrative hearing officer. Tenn. Comp. R. & Regs. title 1240, chs. 7–9–.04(3), .05(3) (1988).

federal court adjudication of the instant action. Those entities listed in the confidentiality policy as having proper access to DCS records include individuals and institutions responsible for the investigation, treatment and/or prosecution of alleged incidents of child abuse. To the extent that the policy includes judicial officials, it is clear from the context of the regulation, as well as from the statutes under which it has been promulgated, that authorized court personnel are exclusively those with a role in child abuse proceedings.

▬ The Court finds that the state may not be construed to have waived the confidentiality of Plaintiff's file either by statute or regulation. This Court has no authority under state law to order production of DCS records and their dissemination in the discovery and trial phases of federal civil rights litigation. Rather, this authority comes from the broad discovery and admissibility mandates of federal law and the prioritization of federal privileges doctrine in federal question matters under Rule 501. As discussed above, the statutory and administrative scheme under Tennessee law ensuring only limited disclosure of child abuse files must yield to a supervening interest in their production and use in federal civil rights actions.

### B. Plaintiff's Constitutional Objection

Plaintiff's first objection to the scope and coverage of the magistrate's protective order is that it constitutes a prior restraint upon the dissemination of discovery materials in violation of the First Amendment to the Constitution. Having already found that application of Rule 501 mandates modification of the protective order, the issue before the Court is whether a less restrictive protective order is in accord with constitutional standards. Moreover, because the Court has concluded that Plaintiff is entitled to question witnesses regarding the contents of her file, her First Amendment arguments have lost some measure of relevance and importance.

▬ As Plaintiff has properly noted, parties do not lose their First Amendment rights by virtue of participation in the legal process. *National Polymer Products v. Borg–Warner Corp.*, 641 F.2d 418, 423 (6th Cir.1981); *CBS, Inc. v. Young*, 522 F.2d 234, 241 (6th Cir.1975). Information obtained in civil discovery is subject to First Amendment protection, yet such protection is circumscribed by the need to prevent discovery abuses and to safeguard legitimate privacy interests. *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 34–35, 104 S.Ct. 2199, 2208–09, 81 L.Ed.2d 17 (1984). Materials obtained in discovery are not entitled to the same level of stringent First Amendment scrutiny as classic prior restraints. *Id.* at 33, 104 S.Ct. at 2207–08. This is because the special nature of discovery-implicating the judicial system's need to control its own practices and procedures—justifies a reduced level of protection. *Koster v. Chase Manhattan Bank*, 93 F.R.D. 471, 477 (S.D.N.Y.1982).

In *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 104 S.Ct. 2199, 81 L.Ed.2d 17 (1984), the United States Supreme Court took up the issue of the extent to which freedom of expression may be restrained by court order governing the scope of pretrial discovery. At the outset, the Court recognized that judicial control over information garnered through depositions, interrogatories and requests for production of documents "does not raise the same specter of government censorship that such control might suggest in other situations." *Id.* at 32, 104 S.Ct. at 2207. This is because the collection of information through discovery is a matter of "legislative grace," in the sense that the Federal Rules of Civil Procedure authorize compulsory disclosure of a great deal of nonpublic information from private sources. *See* Francis H. Hare et al., *Confidentiality Orders* § 6.10, at 140 (1988) ("Restraints on the disclosure of discovered information that has not been presented at trial or otherwise made part of the court record are not restrictions on a traditionally public source of information.") While the right to speak and publish is constitutionally protected, the right to gather generally confidential information through application of mostly unavoidable procedural mechanisms is not. *Seattle Times*, 467 U.S. at 32, 104 S.Ct. at 2207 (citing *Zemel v. Rusk*, 381 U.S. 1, 16–17, 85 S.Ct. 1271, 1280–81, 14 L.Ed.2d 179 (1965)). Given a lower level of

First Amendment scrutiny,[13] the holding of *Seattle Times* was that, notwithstanding the implication of First Amendment rights in the discovery phase of litigation, the issuance of protective orders under Fed.R.Civ.P. 26(c)—predicated upon a showing of good cause—comports with the substantial governmental interest in preventing abuse of its judicial processes. *Id.* at 37, 104 S.Ct. at 2209–10; Hare et al., *Confidentiality Orders* § 6.10, at 141.

As this Court has previously held in another matter, *Seattle Times* does not force a trial court to enter a protective order restricting the dissemination of information obtained in pretrial discovery; rather, it upheld the discretion of the trial court to do so. *International Union v. Garner*, 102 F.R.D. 108, 117 (M.D.Tenn.1984). Because the Court is prepared to give Plaintiff a substantial measure of the relief she has requested in raising her First Amendment objection, it is unnecessary to discuss the constitutional limits of an amended protective order. Plaintiff has evidenced neither an intent nor a desire to publish the contents of her DCS file beyond the scope of the instant litigation. It is sufficient to note, therefore, that the required showing of good cause under Fed. R.Civ.P. 26(c) is more than met by the state's interest in maintaining the confidentiality of its child abuse records. In addition, authorization of limited dissemination of Plaintiff's file strikes an appropriate balance between Plaintiff's legitimate interest in constructing an adequate factual record—an interest that is well within the range of concerns encompassed by the First Amendment—and this Court's obligation to protect those parties from whom discovery is sought from abuse of the judicial process.

### V. Conclusion

The paramount federal interest in accurate factfinding, coupled with Plaintiff's need to disseminate the contents of her file to fact witnesses and the lack of a chilling effect upon reporting and governmental processes, dictates that this Court modify the protective order at issue in this case. While the creation of federal privilege doctrine is necessarily an ad hoc process under Rule 501, the Court is not unmindful of the fact that the instant discovery dispute—pitting the invocation of T.C.A. §§ 37–1–409 and 37–1–612 against a civil rights plaintiff's need for disclosure—is likely to recur in one or more of the federal judicial districts of Tennessee. Accordingly, the foregoing analysis, although certainly not exhaustive, is intended to forestall at least some degree of duplication of effort and exhaustion of judicial resources.

In the exercise of its discretion under 28 U.S.C. § 636(b)(1)(A) and Fed.R.Civ.P. 72(a), the Court SETS ASIDE the first paragraph of the September 27, 1996 protective order governing this matter, (Docket Entry No. 40), and the entirety of the subsequent order, contemporaneously entered, (Docket Entry No. 41), clarifying this language. In their place, the following provision is SUBSTITUTED:

1. Disclosure of any information produced by the Tennessee Department of Human Services ("DHS") or the Department of Children's Services ("DCS"), or Jane Brock, concerning their records regarding Christina Farley and David Farley, Jr., minor children, or their parents, David Farley, Sr. and Sandra Farley, or Hugh Curtiss, is confidential under T.C.A. §§ 37–1–409 and 37–1–612 and is hereby designated to be confidential subject to the provisions of this order and the following exceptions: (1) Counsel for the parties may disclose the contents of materials produced by DHS or DCS to their clients, to associated counsel, and to such other personnel employed by the parties in the litigation of the claims in the above-styled case; (2) counsel are also authorized to interview, depose, or otherwise contact fact witnesses and/or former DHS or DCS em-

---

13. The First Amendment standard derived by the Supreme Court in cases where information is obtained and its dissemination restricted pursuant to court order is comprised of two inquiries: [W]hether the "practice [giving rise to discovery] [furthers] an important or substantial governmental interest unrelated to the suppression of expression" and whether "the limitation of First Amendment freedoms is no greater than is necessary or essential to the protection of the particular governmental interest involved." *Seattle Times*, 467 U.S. at 32, 104 S.Ct. at 2207 (citations omitted).

ployees, solely for purposes connected with the litigation of the claims in the above-styled case, using information, including actual publication to witnesses of such information, derived in whole or in part from materials produced by DHS or DCS; and (3) current and former DHS or DCS employees are hereby ordered by the Court to respond to the parties' legitimate, procedurally-authorized and legally-sanctioned discovery efforts notwithstanding contrary duties arising under T.C.A. §§ 37–1–409 and 37–1–612.

The succeeding paragraphs of the magistrate's protective order remain essentially unaltered, although the Court will republish the protective order in its entirety in its own contemporaneously-entered order. Particular attention is drawn to the fact that those persons to whom confidential material is disclosed must be provided a copy of the now-modified protective order and apprised of the obligations thereunder. In addition, use of confidential material for any purpose other than the preparation and trial of the instant action is prohibited, subject to penalty of contempt. Finally, the Court adds a fifth paragraph to the protective order mandating that, at the conclusion of this case, all DHS or DCS materials produced in this litigation in the possession of the parties, including any and all copies or facsimiles, shall be returned to the appropriate agency.

The Court is satisfied that its amendments to the magistrate's protective order will adequately facilitate Plaintiff's prosecution of her federal civil rights claims. Plaintiff's request for an order granting access to other investigative files compiled or associated with the individual defendants in this matter is therefore DENIED.

An order consistent with this memorandum shall enter.

### ORDER

For the reasons stated in the accompanying memorandum entered contemporaneously herewith, the Court, in its appellate jurisdiction in this matter under 28 U.S.C. § 636(b)(1)(A) and Fed.R.Civ.P. 72(a), finds merit in certain of plaintiff's objections to the September 27, 1996 protective order, (Docket Entry No. 40), issued by U.S. Magistrate Judge Juliet Griffin in the above-entitled action. The Court hereby SETS ASIDE the first paragraph of the protective order and the entirety of the subsequent order, contemporaneously entered, (Docket Entry No. 41), clarifying the confidentiality of the investigative files at issue in this case.

In place of the provisions hereby rescinded, the following PROTECTIVE ORDER shall govern the use and dissemination of any and all information obtained directly or indirectly from the child abuse records produced by the Tennessee Department of Human Services and/or the Tennessee Department of Children's services in connection with the above-captioned matter.

### Protective Order

Pursuant to Fed.R.Civ.P. 26(c) and for good cause shown, it is hereby ORDERED that:

1. Disclosure of any information produced by the Tennessee Department of Human Services ("DHS") or the Department of Children's Services ("DCS"), or Jane Brock, concerning their records regarding Christina Farley and David Farley, Jr., minor children, or their parents, David Farley, Sr. and Sandra Farley, or Hugh Curtiss, is confidential under T.C.A. §§ 37–1–409 and 37–1–612 and is hereby designated to be confidential subject to the provisions of this order and the following exceptions:

(1) Counsel for the parties may disclose the contents of materials produced by DHS or DCS to their clients, to associated counsel, and to such other personnel employed by the parties in the litigation of the claims in the above-styled case; (2) counsel are also authorized to interview, depose, or otherwise contact fact witnesses and/or former DHS or DCS employees, solely for purposes connected with the litigation of the claims in the above-styled case, using information, including actual publication to witnesses of such information, derived in whole or in part from materials produced by DHS or DCS; and (3) current and former DHS or DCS employees are hereby ordered by the Court

to respond to the parties' legitimate, procedurally-authorized and legally-sanctioned discovery efforts notwithstanding contrary duties arising under T.C.A. §§ 37–1–409 and 37–1–612.

2. Any proper person to whom any information identified in ¶ 1 is disclosed under the terms of this order shall be provided a copy of this order. Such persons are directed not to reveal the contents of any disclosure for any purpose other than as permitted in this order or a subsequent order of this Court.

3. The use of any information identified in ¶ 1 for any purpose other than the preparation and trial of the above-styled case or other proceedings related to this litigation is prohibited, except as allowed by statute or modified by subsequent order of this Court.

4. In the event that documents covered by this protective order are filed with the Court, such documents shall be filed under seal. The documents shall be placed in a sealed envelope labeled as follows:

*Farley v. Farley, et al.*, No. 2:96–0008
Documents Under Seal Pursuant to Court
Order
Docket Entry No. ——

The docket entry-number of this protective order shall be inserted as indicated.

5. At the conclusion of this litigation, all DHS or DCS materials produced in this case in the possession of the parties, including, but not limited to, any and all copies or facsimiles, shall be returned to the appropriate agency.

Because the Court finds that this protective order will adequately safeguard the competing interests of the parties in this case and because plaintiff has been granted herein sufficiently broad discovery authority to prosecute her claims, her request for an order permitting access to other files compiled by or associated with the individual defendants in this matter is DENIED.

It is so ORDERED.