**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Jerald WILSON and Sharon Murff, Defendants–Appellants.**

**Nos. 90–2957, 90–2958.**

United States Court of Appeals, Seventh Circuit.

Argued Oct. 31, 1991.

Decided April 10, 1992.

Rehearing In Banc Denied May 22, 1992.

See also 755 F.Supp. 815.

Brian P. Netols (argued), Criminal Div., Barry R. Elden, Asst. U.S. Atty., Office of the U.S. Atty., Criminal Receiving, Appellate Div., Chicago, Ill., for plaintiff-appellee.

Victor M. Pilolla (argued), Oak Park, Ill., Gerald J. Collins, Chicago, Ill., for defendants-appellants.

Before CUMMINGS and MANION, Circuit Judges, and FAIRCHILD, Senior Circuit Judge.

MANION, Circuit Judge.

Jerald Wilson and Sharon Murff appeal their convictions of various federal offenses, most notably mail fraud, 18 U.S.C. § 1341, arising from Wilson's scheme to defraud the Illinois Department of Employment Security (IDES) by filing false unemployment compensation claims. (The jury also convicted Wilson and Murff of credit card fraud, 18 U.S.C. § 1029(a)(2), convictions not at issue in this appeal.) Much of the government's evidence consisted of records obtained from the IDES. Wilson and Murff contend the district court should have excluded those records because they were privileged. We disagree, and affirm Wilson and Murff's convictions.

Wilson is a former IDES employee who used his familiarity with unemployment compensation law and procedure to fraudulently obtain unemployment benefits. Between 1981 and 1986, Wilson used several means to defraud the IDES. Wilson urged friends and acquaintances, including Murff, to file false unemployment compensation claims. Wilson advised these people about how to file claims, occasionally urged them to use false Social Security numbers to prevent detection, and allowed the claimants to falsely list his businesses as their former employers. Wilson also urged several of his businesses' permanent part-time employees (again including Murff) to file false unemployment compensation claims to supplement their incomes, even though they were not eligible to receive unemployment compensation. Finally, on several occasions Wilson filed false unemployment claims for people without their knowledge, using information he learned about them when he encouraged them to file their own previous false claims.

Sometime in 1981, Naomi McCarthy, an IDES investigator, received an anonymous letter about Wilson's transgressions. McCarthy began to investigate Wilson and concluded that he was making false claims or statements. However, she was unable to pursue the investigation further on her own, and decided to turn the case over to federal authorities. McCarthy, with her supervisor's consent, furnished IDES records to the United States Department of Labor to use in a joint investigation of Wilson with the United States Postal Service. That investigation ultimately led to Wilson's and Murff's indictments and convictions.

Section 1900 of the Illinois Unemployment Compensation Act, Ill.Rev.Stat. ch. 48, para. 640, regulates the disclosure of information obtained by the IDES in administering the Act. Specifically, § 1900 A. provides that "[e]xcept as provided in this section, information obtained from any individual or employing unit ... shall: be confidential, not be used in any court in any pending action or proceeding, [and] shall not be admissible in evidence in any action or proceeding other than one arising out of this Act." Ill.Rev.Stat. ch. 48, para. 640 A. Wilson and Murff contend that § 1900 creates an evidentiary privilege that should have prevented the government from introducing at trial any IDES records or the testimony of any IDES employee concerning those records.

■ For purposes of this case, we accept Wilson's and Murff's argument that § 1900 would have prohibited any use of the IDES records in an Illinois court. Section 1900's language supports that position as do Illinois cases interpreting § 1900. See *Lowrance v. Marion Pepsi–Cola Bottling Co.*, 221 Ill.App.3d 623, 164 Ill.Dec. 162, 582 N.E.2d 725 (5th Dist.1991); *People v. Ellis*, 128 Ill.App.3d 180, 83 Ill.Dec. 398, 470 N.E.2d 524 (1st Dist.1984). But state law privileges do not automatically bind federal courts in federal cases. Federal Rule of Evidence 501 provides that, other than in civil cases governed by state law:

> [e]xcept as otherwise required by the Constitution of the United States or provided by Act of Congress or in rules prescribed by the Supreme Court pursuant to statutory authority, the privilege of a witness, person, government, State, or political subdivision thereof shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience.

We must thus decide for ourselves, "in the light of reason and experience," whether any privilege prohibited the government from introducing the IDES records.

■ To determine whether to recognize the privilege Wilson and Murff assert, we must balance the purpose the privilege is meant to serve against the federal interests served by allowing the government to use the evidence. See *United States v. Cartledge*, 928 F.2d 93, 95–96 (4th Cir.1991). The Second Circuit decided in a federal criminal case not to recognize a privilege created by a New York statute almost identical to § 1900. *United States v. Chiarella*, 588 F.2d 1358, 1372 (2d Cir.1978), *rev'd on other grounds*, 445 U.S. 222, 100 S.Ct. 1108, 63 L.Ed.2d 348 (1980). After balancing the competing interests, we agree with the Second Circuit's decision not to recognize the unemployment records privilege.

Laws prohibiting disclosure of unemployment compensation information are meant to further the administration of unemployment compensation laws by encouraging full and accurate reporting from claimants and their employers. See *Ellis*, 83 Ill.Dec. at 400, 470 N.E.2d at 526 (citing *Simpson v. Oil Transfer Corp.*, 75 F.Supp. 819, 822 (N.D.N.Y.1948)). But § 1900 E. of the Illinois Act provides that the IDES "may furnish any information that [it] may deem proper" to any federal agency dealing with unemployment compensation. Ill.Rev.Stat. ch. 48, para. 640 E. In other words, § 1900 E. allows the IDES to disclose information to the Department of Labor, the federal agency responsible for administering state unemployment compensation programs. See 42 U.S.C. §§ 501–04. Illinois' willingness to hand over information to the Department of Labor, as the IDES did in this case, shows that the state itself does not consider its interest in confidentiality sufficiently important to override the federal interest in overseeing the unemployment compensation program.

Against this weak state interest in confidentiality stand important federal interests. The federal government has a strong interest in enforcing federal criminal statutes, which implies a strong policy favoring admissibility of relevant evidence in criminal cases. See *United States v. Gillock*, 445 U.S. 360, 373, 100 S.Ct. 1185, 1193, 63 L.Ed.2d 454 (1980); *Cartledge*, 928 F.2d at 96–97; *Chiarella*, 588 F.2d at 1372. Related to this is the federal courts' general interest in preserving the accuracy of the fact-finding process. Because evidentiary privileges impede the fact-finding function by excluding relevant evidence, federal courts generally disfavor privileges and construe them narrowly. See *Memorial Hospital v. Shadur*, 664 F.2d 1058, 1061 (7th Cir.1981) (citing *United States v. Nixon*, 418 U.S. 683, 710, 94 S.Ct. 3090, 3108, 41 L.Ed.2d 1039 (1974)).

These two interests are especially strong in this case. Wilson and Murff were charged with scheming to defraud Illinois' unemployment compensation system. Besides overseeing state unemployment compensation programs, the federal government helps to pay for these programs. See 42 U.S.C. § 1101(c)(1)(A). Prosecuting those who defraud state unemployment compensation programs is an important

means for protecting the government's investment by ensuring that those programs are run with a minimum of waste and fraud. The IDES records Wilson and Murff seek to suppress are direct evidence, and probably the best evidence, of their scheme to defraud the IDES. To hold that the government may not use the IDES records in this case would make it more difficult for the government to safeguard the program it is charged with administering.

Wilson and Murff rely principally on *In re Hampers*, 651 F.2d 19 (1st Cir.1981) to support their argument for recognizing an unemployment records privilege. In *Hampers*, a federal grand jury was investigating an arson; the government sought state tax records to prove a tax deficiency as the alleged arsonist's motive. The Massachusetts Commissioner of Revenue refused to appear before the grand jury, invoking a state law prohibiting her from disclosing tax return information. *Id.* at 20. The court in *Hampers* held that the Commissioner of Revenue enjoyed a qualified privilege because of the Massachusetts nondisclosure statute. The government could overcome this privilege only by showing that reasonable cause existed to believe a federal crime had been committed, that the information was probative of the crime, and that it could not obtain the same or equally probative information from another source. *Id.* at 23–24.

*Hampers* is distinguishable from this case in two important respects. First, the evidence sought in *Hampers* was probative only of motive, see *id.* at 22, while the IDES records were direct evidence of the fraud against the IDES. Second, the *Hampers* court found that Massachusetts taxpayers turn over information "in a confidence [the information] will not be disclosed," *id.* at 23; § 1900, on the other hand, specifically allows disclosure to the Department of Labor. In short, the *Hampers* court found that based on the facts before it, the balance of state and federal interests tipped in favor of recognizing a limited privilege. Had those facts been different—had the evidence sought been vital to prosecuting the crime or had the

Massachusetts ban on disclosure not been as absolute—the *Hampers* court may not have recognized the privilege. See *id.* at 23.

In our case, unlike in *Hampers*, the balance of competing interests clearly tips against recognizing a privilege that would preclude the government from using the IDES records at trial. Therefore, we affirm Wilson's and Murff's convictions.

Affirmed.