**John B. SEXTON, Plaintiff,**

v.

**POOLE TRUCK LINES, INC., Defendant.**

**Civ. A. No. 94–A–592–N.**

United States District Court,
M.D. Alabama,
Northern Division.

Nov. 28, 1994.

**128**

Charles Michael Quinn, Jon C. Goldfarb, Deborah A. Mattison, Gordon, Silberman, Wiggins & Childs, Birmingham, AL, for plaintiff.

J. Doyle Fuller, Montgomery, AL, Griffin B. Bell, Jr., Ilene W. Berman, Fisher & Phillips, Atlanta, GA, for defendant.

### ORDER

CARROLL, United States Magistrate Judge.

## I. INTRODUCTION AND PROCEDURAL HISTORY

This cause is currently before the court on a motion to quash filed by the Alabama Department of Public Safety on October 20, 1994. The motion seeks an order from this court protecting documents which are subject to a state statutory privilege. Some of the documents were provided to counsel for the plaintiff pursuant to an order of the Circuit Court of Butler County, Alabama in *Sexton v. Alabama Department of Public Safety*, CA No. 94–9. This court then ordered the plaintiff to produce those documents to counsel for the defendants in this case so that they could frame a response to the motion to quash.[1] Counsel for the plaintiff and the defendants have filed briefs in support of their respective positions.[2]

## II. DISCUSSION

The plaintiff was hired as an over-the-road truck driver by the defendants on June 16, 1988. In 1992, the plaintiff experienced some medical problems. The exact nature of the medical problems is in some dispute. However, on December 14, 1992, as a result of his

---

1. Counsel for the plaintiff has also provided a copy of the documents to the court along with the deposition of a former employee of the Department of Public Safety, Helen McGinty, which explains the documents. The deposition was taken in a state court action filed by the plaintiff in an attempt to get the Department of Public Safe- ty documents. By separate order, the documents and the deposition have been placed under seal.

2. The Department of Public Safety did not file a brief but indicated to the court that it would rely on the arguments made by the defendant.

medical problems, the plaintiff was terminated by the defendants.

On April 8, 1993, the plaintiff filed a charge with the Equal Employment Opportunity Commission (EEOC) alleging that the defendant had discriminated against him in violation of the Americans with Disabilities Act, 42 U.S.C. § 12102 *et seq.* In May 1993, the Department of Public Safety made inquiries about the plaintiff's health to determine whether his commercial driver's license should be suspended or revoked because of the health problems which he experienced in 1992. In July 1993, the plaintiff was cleared by the Medical Advisory Board of the Alabama Department of Public Safety to retain his commercial driver's license. He was subsequently employed as an on-the-road driver with another trucking company. In November 1993, he received a letter from the Alabama Department of Public Safety suspending his commercial driver's license for an indefinite period. The plaintiff alleges that the suspension of his license was the result of actions which the defendant took to retaliate against him for the filing of the EEOC charge. In support of his retaliation claim, the plaintiff has subpoenaed

> The complete file maintained by the Alabama Department of Public Safety on John Sexton. Such file should include each and every note, letter, message, computer printout concerning driver history, or any other document that the Department of Public Safety has in its possession which in any way concerns John Sexton.

The court reviewed the records which would be responsive to the subpoena, *in camera*, and has determined that they are relevant to the retaliation claim. The Department of Public Safety opposes production of the records on the ground that the documents are privileged.

■ The documents which the plaintiff seeks by subpoena are documents which were received by the Department of Public Safety "for the purpose of assisting the di-

rector [of the Department of Public Safety] in determining whether a person meets the medical, physical or mental standards to be licensed as a driver" and are, thus, privileged by the provisions of ALA.CODE § 32–6–43.[3] The privilege conferred by the statute is absolute. The statute specifically states that the type of records which the plaintiff seeks to have produced "shall not be divulged to any other person, federal, state or local government or private entity or used as evidence in any trial...."[4]

■ It goes without saying, of course, that the state law privilege does not necessarily apply in this court. Indeed, the provision of Rule 501 of the Federal Rules of Evidence governs the use of the state law privilege in this court. Under that rule, privileges in federal question cases are to be governed "by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience." Privileges in "civil actions and proceedings with respect to an element of a claim or defense as to which the state law supplies the rule of decision" are to be determined in accordance with state law. In cases such as the one sub judice which combines federal question claims and pendent state claims, the federal law of privilege controls. *See Hancock v. Hobbs,* 967 F.2d 462 (11th Cir.1992).

■ The court has been unable to discover any decision, and the parties have not suggested that any decision exists, which would suggest that the privilege at issue in this case is one which currently exists under federal common law. The relevant inquiry, thus, becomes whether this court should, in the interests of comity, recognize the state confidentiality privilege as a matter of federal common law. *In re International Horizons, Inc.,* 689 F.2d 996 (11th Cir.1982). In order to decide whether to adopt a state evidentiary privilege where, as here, a privi-

---

**3.** The plaintiff argues that the documents were furnished by the defendants to retaliate and are, thus, not privileged. Regardless of the defendant's motivation in furnishing the documents, the documents themselves were used for the statutory purpose and are, therefore, privileged.

**4.** The statute does permit the use of the records in proceedings relating to charges of driving under the influence.

lege is asserted which was "not existent in the common law but enacted by the [state] legislature based on unique considerations of government policy," this court must balance "the policies behind the privilege against the policies favoring disclosure." *American Civil Liberties Union, Inc. v. Finch*, 638 F.2d 1336 (5th Cir.1981); *see also Carr v. Monroe Manufacturing Co.*, 431 F.2d 384, 388 (5th Cir.1970).

The state of Alabama has a comprehensive statutory scheme for licensing drivers. Part of that comprehensive scheme creates a medical advisory board to assist the Director of the Department of Public Safety in determining whether a person is medically, physically or mentally fit to drive. The privilege at issue in this case concerns any reports or records received by the Medical Advisory Board or the Director. By attaching a privilege to such reports and records, state law allows persons to communicate information to the Medical Advisory Board about drivers with some guarantee of confidentiality. The privilege serves the obviously important interest of maintaining safety on the highways. It is important to note, however, that the privilege concerns only reports or records and appears to be designed to protect citizens who have complaints. It does not, for example, prevent disclosure of the names of the persons who make up the Medical Advisory Board.

Under the unique circumstances of this case, the policy of the state in protecting persons who make disclosures to the Medical Advisory Board comes in direct conflict with an important federal policy—protecting persons who file charges with the EEOC from retaliation. In this case, the plaintiff alleges that the defendant retaliated against him for filing his EEOC charge by contacting the Department of Public Safety and urging them to revoke his commercial driver's license, thereby destroying his livelihood. The defendant denies that it took any actions against the plaintiff in retaliation for filing his EEOC charge. It also argues that the state privilege is consistent with the federal

law concerning the licensure of commercial drivers and, therefore, that there is "no substantial cost of federal policies" in recognizing a state law that both enforces and is consistent with federal law.[5]

The defendant's argument is not persuasive. First, the state privilege statute enforces federal law only in the most general way. Second and most important, the privilege runs afoul of the very specific and important interest which a citizen has in filing a charge of discrimination free from the threat of retaliation by his present or past employer. If the state privilege at issue in this case is adopted, the information which the defendant provided to the Department of Public Safety will be shielded from disclosure and the plaintiff will be unable to prove his retaliation claim.[6]

The court accordingly concludes that the federal interest in protecting persons who file EEOC charges from retaliation outweighs the state interest in protecting persons who provide information to the Medical Advisory Board, and that the motion to quash is due to be denied. "To rule otherwise in the absence of controlling authority would do violence to the court's duty to search for the truth and would be inimical to the traditional concept of [discovery]...." *Carr v. Monroe*, 431 F.2d at 389 (quoting *Zimmerman v. Poindexter*, 74 F.Supp. 933, 935 (D.Hawaii 1947)). In light of the state interest, however, the court will significantly limit the disclosure of the information.

### III. CONCLUSION

For the foregoing reasons it is hereby ORDERED:

(1) That the Motion to Quash filed by the Department of Public Safety be DENIED;

(2) That the Motion to Compel filed by the defendant be DENIED;

(3) That the Department of Public Safety provide the documents responsive to the sub-

---

**5.** Defendant's Memorandum In Support of Department of Public Safety Motion to Quash Subpoena filed November 21, 1994 at p. 6.

**6.** The court makes no assessment of the validity of the retaliation claim. At this stage of the proceedings, the merits are not at issue.

poena to counsel for the plaintiff on or before December 3, 1994;[7]

(4) That the documents provided by the Department of Public Safety be stamped "CONFIDENTIAL";

(5) That the deposition of Helen McGinty and the Exhibits attached thereto be stamped "CONFIDENTIAL"

(6) That no document stamped "CONFIDENTIAL" may be disclosed to any person except as follows:

(a) the documents stamped confidential may be disclosed

(1) to counsel for parties in this action who are actively engaged in the conduct of this litigation; to the partners, associates, secretaries, paralegal assistants and employees of such an attorney to the extent necessary to render professional services in this litigation;

(2) to persons with prior knowledge of the documents or the confidential information therein and their agents;

(3) to persons noticed for deposition or designated as trial witnesses to the extent reasonably necessary in preparing to testify;

(4) to outside consultants or experts retained for the purposes of assisting counsel in this litigation.

The clerk's office is hereby directed to provide copy of this order to counsel for the parties and to Jack Curtis, counsel for the Alabama Department of Public Safety, immediately by FAX.

---

**7.** Counsel for the defendant may obtain any of the records which it does not have from counsel for the plaintiff or from the Department of Public Safety by subpoena.