John R. Harrison, Jr., San Antonio, TX, for Plaintiffs–Appellants.

Brian Lynn Blakeley, Blakeley & Associates, San Antonio, TX, for Defendant–Appellee.

Before DeMOSS and DENNIS, Circuit Judges, and ROSENTHAL, District Judge.*

PER CURIAM:

In October 1996, this case was tried to a jury in the United States District Court for the Western District of Texas. The jury found that the damage to the Balandran home was caused by a leaky sewer line and awarded the Balandrans $66,500. Shortly thereafter, Safeco moved for judgment as a matter of law asserting that the Balandrans' claim was excluded from coverage under Subsection (h) of the insurance policy in question. The district court granted the motion and entered judgment in favor of Safeco. The Balandrans appealed, claiming that Subsection (h) does not exclude from coverage losses that fall within the accidental discharge peril.

On November 18, 1997, this Court certified the following question to the Supreme Court of Texas.

Whether the exclusion in Subsection (h) of the 1991 Texas Standard Homeowner Policy—Form B excludes from coverage damage to a dwelling caused by a move-

ment of its foundation that was caused by an underground plumbing leak?

The factual circumstances and procedural background involved in this controversy are fully described in our published opinion certifying this question. *Balandran v. Safeco Ins. Co. of America*, 129 F.3d 747 (5th Cir. 1997).

On July 3, 1998, the Supreme Court of Texas issued its opinion and judgment in response to our certified question, holding that:

1) Exclusion 1(h) of the 1991 Texas Standard Homeowner Policy—Form B does not exclude from coverage damage to a dwelling caused by a movement of its foundation that was caused by an underground plumbing leak.

2) Joe Balandran and Dolores Balandran shall recover from Safeco Insurance Company of America, which shall pay the costs in this Court.

*See Balandran v. Safeco Ins. Co. of America*, 972 F.Supp. 738 (Tex.S.Ct.1998).

In light of the decision of the Supreme Court of Texas, we now vacate the judgment entered by the district court in favor of Safeco; and remand this case to the district court for entry of judgment on the jury verdict consistent with the decision of the Supreme Court of Texas.

In re: GRAND JURY SUBPOENA
DATED DECEMBER 17,
1996.

No. 97–10507.

United States Court of Appeals,
Fifth Circuit.

July 27, 1998.

* District Judge for the Southern District of Texas, sitting by designation.

Madeleine Brinton Johnson, Dallas, TX, for Plaintiff–Appellant.

Leslie Stephen Mendelsohn, Judith A. Sanders–Castro, San Antonio, TX, for Movants–Appellees.

David Cohen, Austin, TX, for Alternative Dispute Resolution Section of the State of Texas, Amicus Curiae.

D. Gene Valentini, Lubbock, TX, for Texas Dispute Resolutions, Directors Council, Amicus Curiae.

Wes Sims, Waco, TX, for Texas Farmers Union, Amicus Curiae.

Before KING and DAVIS, Circuit Judges, and VANCE *, District Judge.

W. EUGENE DAVIS, Circuit Judge:

The Government appeals an order of the district court quashing a grand jury subpoena served on the custodian of records of the Texas Agricultural Mediation Program ("TAM"), a state agricultural loan mediation program operated and administered by Texas Tech University, to the extent the subpoena sought documents relating to mediation proceedings involving appellees Gervase and Ira Moczygembas and the Poth Land and Cattle Company (collectively, the "Moczygembas"). The district court ruled that such documents are protected from disclosure to the grand jury by a federal mediation privilege. For the reasons set out below, we reverse and remand.

## I.

TAM is a state agricultural loan mediation program that receives federal funding under the Agricultural Credit Act of 1987, Pub.L.N.

100–233. The Agricultural Credit Act was passed in response to the growing problem of farm debt in the United States. Among other things, the Act provides for financial assistance to states for the operation and administration of agricultural loan mediation programs to assist in resolving disputes between farmers and their agricultural lenders. *See* 7 U.S.C. § 5102. To qualify for financial assistance, a state must obtain certification from the Secretary of Agriculture. *See* 7 U.S.C. § 5101(a). The Secretary will certify a state for qualification if the state has in effect an agricultural loan mediation program that, among other things, "provides that mediation sessions shall be confidential[.]" *See* 7 U.S.C. § 5101(c)(3)(D).

The state of Texas has received financial assistance for the operation and administration of TAM since 1988. Its proposal for certification provided that TAM would be operated in accordance with the confidentiality provisions of the Texas Alternative Dispute Resolution Procedures Act (referred to herein as the "Texas ADR statute"), Tex. Civ. Prac. & Rem.Code §§ 154.001 *et seq.* The Texas ADR statute provides that "a communication relating to the subject matter of any civil or criminal dispute made by a participant in an alternative dispute resolution procedure ... is confidential, is not subject to disclosure, and may not be used as evidence against the participant in any judicial or administrative proceeding." *See* Tex. Civ. Prac. & Rem.Code §§ 154.073(a). However, if this provision "conflicts with other legal requirements for disclosure of communications or materials, the issue of confidentiality may be presented to the court having jurisdiction of the proceedings to determine, in camera, whether the facts, circumstances, and context of the communications or materials sought to be disclosed warrant a protective order of the court or whether the communications or materials are subject to disclosure." § 154.073(d).

In 1995, during the course of an audit of TAM, the Office of Investigator General ("OIG") of the United States Department of Agriculture ("USDA") discovered a number

* District Judge of the Eastern District of Louisiana, sitting by designation.

of irregularities and began to suspect criminal wrongdoing. The OIG's suspicions eventually led to a grand jury investigation of TAM. In November 1996, a grand jury subpoena was served on TAM's custodian of records. On December 16, 1996, one day before the return date of the subpoena, the Moczygembas moved to intervene and quash the subpoena on the ground that documents relating to mediation proceedings involving them are protected from disclosure by a mediation privilege.

■ The district court referred the matter to a magistrate judge. Before a hearing was held, Texas Tech fully complied with the subpoena and turned over documents relating to various mediation proceedings, including those involving the Moczygembas. The magistrate judge subsequently denied the Moczygembas' motion on the ground that federal law does not recognize a mediation privilege. The Moczygembas appealed the magistrate's denial to the district court, which held that the documents were protected from disclosure by a federal mediation privilege and vacated the magistrate's order. On remand, after making further findings as instructed by the district court, the magistrate judge entered an order quashing the subpoena to the extent it sought documents relating to mediation proceedings involving the Moczygembas. The district court denied the Government's appeal of the magistrate's order. The Government appeals that decision, which is final under 28 U.S.C. § 1291. *See In re Grand Jury Subpoena for Attorney Representing Criminal Defendant Reyes–Requena*, 913 F.2d 1118, 1122 (5th Cir.1990) (order quashing grand jury subpoena is final decision under 28 U.S.C. § 1291); *In re Grand Jury Subpoena*, 646 F.2d 963, 968 (5th Cir.1981) (same).

## II.

■ Before turning to the merits of this appeal, we quickly dispose of two arguments raised by the Government concerning the district court's exercise of jurisdiction in this case. First, the Government contends that the Moczygembas lacked standing to challenge the grand jury subpoena because the subpoena was not directed at them, nor did they have a possessory interest in the documents requested. This contention is without merit. A third party has standing to challenge a grand jury subpoena where the third party has a claim of privilege respecting information or materials sought by the subpoena. *See In re Grand Jury*, 111 F.3d 1066, 1073–74 (3d Cir.1997); *In re Grand Jury Proceedings*, 814 F.2d 61, 66 (1st Cir. 1987); *In re Subpoenas to Local 478, Int'l Union of Operating Engineers and Benefit Funds*, 708 F.2d 65, 66 (2d Cir.1983). Because the Moczygembas raised a claim of privilege respecting the documents at issue, they had standing to challenge the subpoena.

■ The Government also contends that the Moczygembas' motion to quash the subpoena was moot by the time the district court ruled that the documents were privileged because by then Texas Tech had fully complied with the subpoena and the documents had been turned over to the grand jury. This contention also lacks merit. A motion to quash a grand jury subpoena is not moot even though documents have been produced in compliance with the subpoena and turned over to the grand jury because a court can still grant a party some relief by ordering the return or destruction of the documents produced. *See In re Grand Jury Subpoenas Duces Tecum*, 78 F.3d 1307, 1310–11 (8th Cir.1996); *In re Grand Jury Subpoenas Dated December 7 and 8*, 40 F.3d 1096, 1100 (10th Cir.1994); *see also Church of Scientology of California v. United States*, 506 U.S. 9, 13, 113 S.Ct. 447, 121 L.Ed.2d 313 (1992) (appeal of summons issued by IRS not moot even though tapes sought by summons had been produced because court could render partial relief by ordering the return or destruction of the tapes).

## III.

We turn now to the merits of this appeal. The Government argues that the district court erred in recognizing a federal mediation privilege that protects documents relating to mediation proceedings involving the Moczygembas from disclosure to the grand jury. The Moczygembas argue that the district court correctly recognized and applied a

mediation privilege created by Congress. In ruling that the documents are protected from disclosure, the district court relied on three separate statutory schemes: 1) the Agricultural Credit Act; 2) the Texas ADR statute; and 3) the Alternative Dispute Resolution Act ("ADRA"), 5 U.S.C. § 571 *et seq.*, a federal statute that authorizes federal agencies to use alternative dispute resolution proceedings to resolve certain disputes. The court first observed that the Agricultural Credit Act, at 7 U.S.C. § 5101(c)(3)(D), requires state agricultural loan mediation programs to provide that "mediation sessions shall be confidential" in order to qualify for federal funding. Because Texas represented that TAM would be operated in accordance with the confidentiality provisions of the Texas ADR statute and TAM was certified accordingly, the district court concluded that the Texas ADR statute "supplies the federal law of privilege in this case."

As set out above, the Texas ADR statute provides that "a communication relating to the subject matter of any civil or criminal dispute made by a participant in an alternative dispute resolution procedure ... is confidential, is not subject to disclosure, and may not be used as evidence against the participant in any judicial or administrative proceeding." *See* Tex. Civ. Prac. & Rem.Code § 154.073(a). However, if this provision "conflicts with other legal requirements for disclosure of communications or materials, the issue of confidentiality may be presented to the court having jurisdiction of the proceedings to determine, in camera, whether the facts, circumstances, and context of the communications or materials sought to be disclosed warrant a protective order of the court or whether the communications or materials are subject to disclosure." § 154.073(d).

The district court determined that the statute's nondisclosure provision was in conflict

---

with the ADRA, which provides that "information concerning any [mediation] communication" may be disclosed if a court determines that such disclosure is necessary to help establish certain violations of law. *See* 5 U.S.C. § 574(a)(4)(B). Relying on 5 U.S.C. § 574(e)[1], the court concluded that before a court balances the equities to make such a determination in a particular case, the mediator must make reasonable efforts to notify the parties involved who must be given 15 days to offer to defend a refusal of the mediator to disclose the requested information. The court also concluded, relying on 5 U.S.C. § 574(c)[2], that materials disclosed in violation of the ADRA's nondisclosure provisions are inadmissible in any proceeding relating to the issues in controversy with respect to which the communication was made. Because the district court was unable to determine from the record whether the Moczygembas were notified of the service of the grand jury subpoena on TAM but failed to offer to defend a refusal to comply within 15 days of receiving such notice, the court referred the matter to the magistrate judge, instructing the magistrate judge to grant the Moczygembas' motion to quash if TAM had not made reasonable efforts to notify the Moczygembas of the service of the subpoena. The magistrate ultimately determined that TAM had not done so and granted the motion to quash.

We review the district court's statutory interpretation *de novo*. *See Spacek v. Maritime Ass'n*, 134 F.3d 283, 288 (5th Cir. 1998). We begin by observing that neither the Texas ADR statute nor the ADRA has any application in this case. The district court determined that the Texas ADR statute "supplies the federal law of privilege in this case" because § 5101(c)(3)(D) requires states to provide that mediation sessions shall remain "confidential" and Texas repre-

---

1. 5 U.S.C. § 574(e) provides:

   If a demand for disclosure ... is made upon a [mediator] regarding a dispute resolution communication, the [mediator] shall make reasonable efforts to notify the parties ... of the demand. Any party ... who receives such notice and within 15 calendar days does not offer to defend a refusal of the [mediator] to

   disclose the requested information shall have waived any objection to such disclosure.

2. 5 U.S.C. § 574(c) provides:

   Any dispute resolution communication that is disclosed in violation of subsection (a) or (b), shall not be admissible in any proceeding relating to the issues in controversy with respect to which the communication was made.

sented that TAM's mediation sessions would be kept confidential in accordance with the Texas ADR statute's confidentiality provisions. However, nothing in § 5101(c)(3)(D) or the Agricultural Credit Act's other provisions concerning state agricultural loan mediation programs suggests that the meaning of "confidential" is determined by resort to other sources.[3]

■ The district court also concluded that the Texas ADR statute's nondisclosure provisions conflicted with the ADRA. The ADRA allows an "agency" to "use a dispute resolution proceeding for the resolution of an issue in controversy that relates to an administrative program." *See* 5 U.S.C. § 572(a). "Agency" is defined as "each authority of the Government of the United States," subject to certain exclusions. *See* 5 U.S.C. §§ 551(1), 571(1). An "issue in controversy" means "an issue which is material to a decision concerning an administrative program of an agency, and with which there is disagreement" either "between an agency and persons who would be substantially affected by the decision" or "between persons who would be substantially affected by the decision." *See* 5 U.S.C. § 571(8)(A), (B). There is no such "issue in controversy" involved in this case.

■ Accordingly, we are left to determine whether documents relating to mediation proceedings involving the Moczygembas are privileged and protected from disclosure to the grand jury under the Agricultural Credit Act. To reiterate, 7 U.S.C. § 5101(c)(3)(D) requires a state agricultural loan mediation program to provide that mediation sessions shall be confidential in order to qualify for

federal funding. In imposing this requirement, Congress obviously sought to protect information relating to mediation sessions to some extent. Confidentiality is critical to the mediation process because it promotes the free flow of information that may result in the settlement of a dispute. *See, e.g.,* Kenneth R. Feinberg, *Mediation—A Preferred Method of Dispute Resolution,* 16 Pepp. L.Rev. S5, S28–29 (1989). In the absence of clear congressional intent to the contrary, however, we do not read § 5101(c)(3)(D) as creating an evidentiary privilege that protects information relating to mediation sessions from disclosure in grand jury proceedings. Section 5101(c)(3)(D) requires only that mediation sessions remain "confidential."[4] "Confidential" does not necessarily mean "privileged." *See, e.g., Nguyen Da Yen v. Kissinger,* 528 F.2d 1194, 1205 (9th Cir.1975) (concluding that records were confidential but not privileged); *State v. Thompson,* 54 Wash.2d 100, 338 P.2d 319, 322 (1959) (holding that requirement of confidentiality in statute did not create evidentiary privilege); *see also American Civil Liberties Union of Mississippi v. Finch,* 638 F.2d 1336, 1342 (5th Cir.1981) (assuming *arguendo* that confidentiality requirement in statute created evidentiary privilege). In the ADRA, by contrast, Congress explicitly provided that, subject to certain exceptions, a mediator "shall not voluntarily disclose or through discovery or compulsory process be required to disclose any information concerning any dispute resolution communication or any communication provided in confidence" to the mediator. *See* 5 U.S.C. § 574(a).

---

3. The Moczygembas do not argue that the Texas ADR statute in and of itself creates an evidentiary privilege that should be recognized in federal court. Rule 501 of the Federal Rules of Evidence governs the applicability of evidentiary privileges in federal court. Rule 501 provides that "[e]xcept as otherwise required by the Constitution of the United States or provided by an act of Congress or in rules prescribed by the Supreme Court pursuant to statutory authority," and except "with respect to an element of a claim or defense as to which State law supplies the rule of decision," the recognition of privileges "shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience." When a party seeks to assert a

privilege that does not exist at common law but is enacted by a state legislature, this court determines whether to recognize the privilege by "balancing the polices behind the privilege against the policies favoring disclosure." *American Civil Liberties Union of Mississippi, Inc. v. Finch,* 638 F.2d 1336, 1343 (5th Cir.1981). The Moczygembas have not argued that a mediation privilege exists at common law or that recognition of the privilege created by the Texas ADR statute is warranted. '

4. We reviewed the legislative history of the Act but did not come across any discussion concerning this confidentiality requirement.

Because privileges are not lightly created, *United States v. Nixon,* 418 U.S. 683, 710, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974), we will not infer one where Congress has not clearly manifested an intent to create one. Thus, we hold that § 5101(c)(3)(D) does not protect documents relating to mediation proceedings involving the Moczygembas from disclosure to the grand jury. We observe, however, that due to the secrecy of grand jury proceedings, *see* Fed.R.Crim.P. 6(e), the confidentiality of the Moczygembas' mediation sessions will not be severely compromised by the disclosure of information relating to those sessions to the grand jury. Of course, if the grand jury returns an indictment, such information may become public. In returning an indictment, however, a grand jury indicates that it has found probable cause to believe that a criminal offense has occurred. We are satisfied that Congress did not intend that § 5101(c)(3)(D) be used to shield wrongdoing arising out of the state agricultural loan mediation process. Indeed, even the ADRA provides for disclosure where a court determines that disclosure is necessary to "help establish a violation of law ... of sufficient magnitude in the particular case to outweigh the integrity of dispute resolution proceedings in general by reducing the confidence of parties in future cases that their communications will remain confidential." *See* 5 U.S.C. § 574(a)(4)(B). Thus, if an indictment is returned, any interest the Moczygembas have in the confidentiality of their mediation sessions will have to give way to the public interest in the administration of criminal justice.

## IV.

For the reasons set out above, we conclude that the district court erred in ruling that documents relating to mediation proceedings involving the Moczygembas are privileged and protected from disclosure to the grand jury. We therefore reverse and remand this matter for further proceedings consistent with this opinion.

REVERSED and REMANDED.