**Joanne FREED, Plaintiff,**

v.

**GRAND COURT LIFESTYLES, INC., Defendant.**

No. C–3–97–443.

United States District Court,
S.D. Ohio,
Western Division.

Dec. 21, 1998.

Diane Leslie Gentile, Pickrel, Schaeffer & Ebeling—3, Dayton, OH, for Joanne Freed, plaintiff.

Mark Joseph Stepaniak, Taft, Stettinius & Hollister—1, Cincinnati, OH, Gregory Parker Rogers, Taft, Stettinius & Hollister, Cincinnati, OH, Joseph H Guffey, M Wade Baughman, Husch & Eppenberger, St Louis, MO, for Grand Court Lifestyles Inc, defendant.

Crucita Flecha, Ohio Attorney General—2, Employment Services Section, Columbus, OH, for Ohio Bureau Employment, movant.

Crucita Flecha, Diane Gentile, Mark Stepaniak, Gregory Rogers, Joseph Guffey.

DECISION AND ENTRY SUSTAINING IN PART AND OVERRULING IN PART MOTION TO QUASH SUBPOENA/MOTION FOR PROTECTIVE ORDER (DOC. # 18) FILED BY THE ADMINISTRATOR OF THE OHIO BUREAU OF EMPLOYMENT SERVICES.

RICE, Chief Judge.

This matter comes before the Court upon a Motion to Quash a Subpoena and Motion for a Protective Order filed by the Administrator of the Ohio Bureau of Employment Services (OBES). (Doc. # 18). The Administrator contends that certain files and records subpoenaed by the Defendant are protected from disclosure by a statutory privilege found in Ohio Rev.Code § 4141.21.

## I. Factual and Procedural Background

Joanne Freed filed a Complaint against Grand Court Lifestyles, Inc. ("Grand Court"), on October 6, 1997, alleging, *inter alia*, a violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.* (Doc. # 1). In support of her claim, Freed states that she was, at all relevant times, a "qualified individual with a disability," within the meaning of the ADA. (*Id.* at ¶ 16). In an effort to obtain evidence suggesting otherwise, Grand Court caused subpoenas to be served upon the custodians of records for OBES's Dayton and Columbus offices.

The subpoenas directed the custodians to testify at a September 29, 1998, deposition, and to provide Grand Court with "[a]ny and all files and documents relating to any claim for benefits, including without limitation, the determination of each claim, any appeals of each claim, transcripts or tapes of any hearings, meetings or other conversations regarding each claim, and any benefits received as a result of each claim, filed by on or behalf of [sic] Joanne Freed...." (Doc. # 18 at Exh. A). No OBES representatives appeared for the deposition, however, and the agency has not released the requested documents. Instead, the Administrator filed a "Motion to Quash Subpoena/Motion for Protective Order" on September 29, 1998, arguing that the requested information is privileged under state law. (Doc. # 18).

In support of its Motion, OBES relies upon Ohio Rev.Code § 4141.21, which states:

"Except as provided in sections 4141.16, 4141.161 [4141.16.1], 4141.162 [4141.16.2], and 4141.163 [4141.16.3] of the Revised Code, and subject to section 414[1].43 of the Revised Code, the information maintained by the administrator of the bureau of employment services or furnished to the administrator by employers or employees pursuant to this chapter is for the exclusive use and information of the bureau of employment services in the discharge of its duties

and shall not be open to the public or be used in any court in any action or proceeding pending therein, or be admissible in evidence in any action, other than one arising under those sections. All of the information and records necessary or useful in the determination of any particular claim for benefits or necessary in verifying any charge to an employer's account under sections 4141 .23 to 4141.26 of the Revised Code shall be available for examination and use by the employer and the employee involved or their authorized representatives in the hearing of such cases, and that information may be tabulated and published in statistical form for the use and information of the state departments and the public."

The Administrator properly notes that the exceptions contained in Ohio Rev.Code § 4141.21 permit the disclosure of OBES information only to other state or federal agencies. Furthermore, the Administrator relies upon Ohio Rev.Code § 4141.22, which prohibits OBES employees from divulging information secured in the course of their employment, except to other OBES employees, or as provided by § 4141.21. Under Ohio law, the penalty for any unauthorized disclosure is disqualification from employment with OBES. *See* Ohio Rev.Code § 4141.22.

The Administrator also contends the foregoing provisions are supported by sound public policy. Specifically, the Administrator claims that "[t]he successful operation of OBES' programs depends on the cooperation of employers and individuals, and protection of sensitive information is one means of encouraging such cooperation." (Doc. # 18 at 6). Finally, the Administrator cites several state and federal cases which purportedly support OBES's Motion to Quash Grand Court's subpoena. (*Id.* at 7–8).

In response, Grand Court raises four arguments. *First*, it contends OBES' records are relevant to Freed's ADA action. *Second*, it claims Freed "waived" the pro-

tection of Ohio Rev.Code § 4141.21 when she filed her ADA claim, placing her physical condition and ability to work in issue. *Third*, Grand Court insists that the cases cited by the Administrator are distinguishable, and in any event, not binding upon the Court. *Finally*, it contends the Court can protect the Administrator's interests by allowing the subpoenaed information to be reviewed *in camera* or disclosed under seal.

## II. *Analysis*

■ OBES argues at length that disclosure of the subpoenaed information is prohibited by state law. The Court notes, however, that state privilege law is not controlling in federal question cases. "In federal court when dealing with a federal question [Fed.R.Evid.] 501 states that privilege 'shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in light of reason and experience.'" *Hancock v. Dodson*, 958 F.2d 1367, 1372–1373 (6th Cir.1992); *see also Baldwin v. Rice*, 144 F.R.D. 102, 106 (E.D.Cal.1992) ("There can be no doubt, however, that a state legislature cannot purport to make binding pronouncements of law concerning what evidence may be privileged or otherwise admissible in a federal court action involving claims based on federal law."). This rule applies even when pendent state law claims exist. *Hancock*, 958 F.2d at 1373.

Since Ohio law is not controlling on the privilege issue, the Court finds unpersuasive OBES's argument that its release of the requested information would violate Ohio Rev.Code § 4141.21. For the same reason, the Court is unpersuaded by the Administrator's reliance upon Ohio case law holding that the statute precludes OBES from disclosing its files, pursuant to a subpoena, in state-court proceedings. Unless the Court recognizes Ohio's "unemployment information" privilege as part of the common law of the United States, OBES's motion must be denied. Fed.

R.Evid. 501; *EEOC v. Illinois Dept. of Employment Security,* 995 F.2d 106, 107 (7th Cir.1993); *Farley v. Farley,* 952 F.Supp. 1232, 1235–1236 (M.D.Tenn.1997).

Unfortunately, OBES does not frame its argument in the context of federal common law. The Administrator makes only a passing reference to Fed.R.Evid. 501, and OBES's analysis of federal case law fills less than one page. (Doc. # 18) at 7. Furthermore, the scant federal authority cited by the Administrator provides little support for OBES's position. The Administrator notes that "[o]ther Federal Courts have upheld the nondisclosure of various departmental records by construing similar statutes." In support of this statement, OBES cites, without any analysis, three cases predating the enactment of Fed.R.Evid. 501. Two of those cases, *In re Mengel,* 201 F.Supp. 687 (1962), and *Boske v. Comingore,* 177 U.S. 459, 20 S.Ct. 701, 44 L.Ed. 846 (1900), involved attempts by individuals in state court proceedings to obtain information that was confidential and privileged under federal law. Neither case provides any support for OBES's Motion to Quash. The third case cited by the Administrator, *Herman Brothers Pet Supply, Inc. v. NLRB,* 360 F.2d 176 (6th Cir. 1966), warrants greater discussion but, in the end, provides little support for the Administrator's position. In that case, which involved an unfair labor practice complaint, the petitioners had secured a subpoena from the NLRB and served it upon the Michigan Employment Security Commission, seeking the unemployment compensation records of certain employees. *Id.* at 177. An NLRB trial examiner quashed the subpoena, however, finding the records confidential under a state statute and, therefore, not subject to disclosure. *Id.* The Sixth Circuit subsequently relied upon a state Attorney General's opinion construing the Michigan statute at issue, and found the agency's records not subject to disclosure. *Id.* at 177–178.

Significantly, the Sixth Circuit's ruling preceded the enactment of Fed.R.Evid. 501, and the court presumed, without any discussion, that state privilege law applied to the litigation. More recent cases have questioned the continued vitality of *Herman Brothers* to the extent it presumed the application of a state statutory privilege. *See EEOC v. Illinois Dept. of Employment Security,* 995 F.2d at 109 ("*Herman Brothers* predates ... the adoption of Fed.R.Evid. 501. The sixth circuit assumed that state privileges apply in federal litigation. That assumption is no longer warranted."); *In the Matter of Grand Jury Impaneled January 21, 1975,* 541 F.2d 373, 381 (3rd Cir.1976) (noting that the *Herman Brothers* court failed to discuss, and apparently assumed, the propriety of recognizing a state statutory privilege). Because *Herman Brothers* predates the enactment of Fed.R.Evid. 501, the Sixth Circuit did not consider whether Michigan's statutory privilege should be absorbed as part of the common law of the United States and applied in federal question litigation. Accordingly, the Court does not find *Herman Brothers* dispositive in the present case.

The Administrator also has cited three orders issued by the United States District Court for the Northern District of Ohio in the 1970s. In each of those rulings, the court quashed a subpoena seeking OBES records. The orders are so brief, however, that they provide no insight into the courts' reasoning. In *Marshall v. Brite Metal Treating,* No. C77–1105 (N.D.Ohio June 16, 1978), the court provided two sentences of analysis in its one-page order, stating:

"This Court recognized Ohio Rev. Code § 4141.2[1] as establishing a basis of privilege in *King v. General Tire & Rubber Co.,* Civil No. 7335 (N.D.Ohio, August 5, 1975). *See also, Hartley v. Gelman Instrument Co.,* Civil No. 37153 (N.D.Ohio, August 2, 1973, Green, J.). Moreover, the Federal Rules of Evidence have not abridged state law with regard to privileges. Fed.R. of Evid. 501."

■ The *Marshall* court's declaration that "the Federal Rules of Evidence have not abridged state law with regard to privileges" is only partially correct. Evidence Rule 501 does not abrogate state privilege law in diversity cases involving state law issues. In federal question cases, however, the federal law of privilege applies. *Hancock v. Dodson,* 958 F.2d at 1373. A court may consider state privilege law in a federal question case, but the rule it adopts exists as a component of the federal common law, not state law. *Hancock v. Hobbs,* 967 F.2d 462, 467 n. 9 (11th Cir. 1992); *Tennenbaum v. Deloitte & Touche,* 77 F.3d 337, 340 (9th Cir.1996).

The two other orders relied upon by OBES are even less instructive than *Marshall.* In *Berger v. Lipe–Rollaway Corp.,* No. C 79–217A (N.D.Ohio Aug. 16, 1979), the court quashed a subpoena requesting unemployment compensation files from OBES. In support of its one and one-half page ruling, the court noted that Ohio Rev.Code § 4141.21 precluded disclosure of the information. After citing the statute, the court reasoned: "Therefore, the plaintiff has no right to the records she seeks and the motion should be granted." Following this statement, the court cited *Marshall* for support. Similarly, in *Castillo v. Ackerman,* No. C 79–412 (N.D.Ohio Nov. 27, 1979), the court quashed a subpoena seeking information from OBES. The court noted in its one-page order that Ohio Rev.Code § 4141.21 precluded disclosure of the requested documents. After making that observation, the court reasoned: "Therefore, the plaintiffs have no right to the records they seek and the motion to quash should be granted." The *Castillo* cited *Marshall* and *Berger* in support of its ruling.

Unfortunately, the Court cannot determine whether *Berger* and *Castillo* involved federal questions or whether only state law issues were implicated. As noted above, if the two cases involved only state law issues, they were decided properly based upon Ohio's statutory privilege law. In

that event, however, the Court would find them distinguishable from the present case, which involves a federal question. Conversely, if *Berger* and *Castillo* involved federal issues, with or without pendent state law claims, then federal privilege law applied, and the two courts erred by directly applying Ohio's statute, without first considering whether the privilege embodied in Ohio Rev.Code § 4142.21 existed under federal common law. Fed.R.Evid. 501; *Hancock,* 958 F.2d at 1373.

■ When deciding whether to recognize Ohio's statutory privilege under Fed. R.Evid. 501, the Court must balance the policy interests served by recognizing the state's privilege against the policy interests served by allowing Grand Court to access the requested information. *In re Zuniga,* 714 F.2d 632, 639 (6th Cir.1983) (recognizing that the "appropriate scope of a privilege, like the propriety of the privilege itself, is determined by balancing the interests protected by shielding the evidence sought with those advanced by its disclosure"); *United States v. Wilson,* 960 F.2d 48, 50–51. (7th Cir.1992); *In re Grand Jury Subpoena Dated December 17, 1996,* 148 F.3d 487, 492 n. 3 (5th Cir. 1998); *In re Grand Jury Investigation,* 918 F.2d 374, 383 (3rd Cir.1990) ("In developing the federal common law of privileges ... we must attempt to balance the need for full disclosure of all probative evidence against the countervailing requirement of confidentiality that furthers the objectives underlying the privilege claimed"); *Farley v. Farley,* 952 F.Supp. 1232, 1236 (M.D.Tenn.1997) ("[I]n civil actions arising under federal law, the presiding federal judge has greater liberty to fashion evidentiary privileges based upon reason and experience...."); *see also Jaffee v. Redmond,* 518 U.S. 1, 116 S.Ct. 1923, 1928, 135 L.Ed.2d 337 (1996) (noting that "[e]xceptions from the general rule disfavoring testimonial privileges may be justified, however, by a 'public good' transcending the normally predominant principle of utilizing

all rational means for ascertaining the truth").

The Court's own research has uncovered several cases from other districts, refusing to recognize a state statute declaring unemployment compensation records privileged. Two of the cases, however, involved criminal prosecutions in which the federal government sought state unemployment records. In *United States v. Chiarella,* 588 F.2d 1358, 1372 (2nd Cir. 1978), *rev'd on other grounds,* 445 U.S. 222, 100 S.Ct. 1108, 63 L.Ed.2d 348 (1980), the Second Circuit declined to recognize a New York statute that prohibited the use of unemployment compensation records in any court proceeding, unless the state labor commissioner was a party to the action. The court found New York's statute subordinate to "the strong federal policy favoring admissibility in criminal cases." *Id.* Similarly, in *United States v. Wilson,* 960 F.2d 48 (7th Cir.1992), the court refused to apply an Illinois statute that created a privilege for state unemployment records. In so doing, the court reasoned that the state's interest in promoting full and accurate reporting by employees and employers did not outweigh the federal government's interest in its mail fraud prosecution. *Id.* at 50.

In another Seventh Circuit case, the court held that the Illinois unemployment records statute yielded to the Equal Employment Opportunity Commission's investigative power. In *E.E.O.C. v. Illinois Dept. of Employment Security,* 995 F.2d 106 (7th Cir.1993), the court reversed a District Court's order quashing an EEOC subpoena seeking an unemployment compensation hearing transcript from the Illinois Department of Employment Security. *Id.* at 107. In support of its ruling, the Seventh Circuit acknowledged the EEOC's broad statutory subpoena power. *Id.* (noting that 42 U.S.C. § 2000e–8(a) entitled the EEOC to "any evidence ... that relates to unlawful employment practices covered by [the laws it administers] and is relevant to the charge under investiga-

tion"). The court also cited favorably to *United States v. Wilson,* 960 F.2d 48, in which, as noted above, the court found a federal prosecutor entitled to the state's unemployment records. Recognizing that the EEOC investigates and prosecutes civil rights cases, the court concluded that it "had no lesser entitlement to these records." The Court also discounted the state's interest in confidentiality, reasoning:

> "Illinois justifies its privilege as a way to encourage truthful and complete disclosure to state officials; people who do not fear that evidence will fall into the hands of persons who may use it against them will be more forthcoming, so the argument goes. This is far from clear; one could as readily say that people who know that third parties will not examine the evidence have less to fear from telling lies—for the truth is less likely to emerge. Perhaps secrecy emboldens workers to seek unemployment benefits, freeing them from the fear that the employer will reply by advancing 'cause' for the discharge that will hinder their efforts to find other jobs. Again, however, this is a two-edged argument: an employee with less to fear from calumny is more likely to claim benefits to which he is entitled, but secrecy also enables employees to bamboozle other employers by hiding the true reasons for their separations. Finally, Illinois tells us that confidentiality makes adjudication of requests for unemployment compensation simpler. Administrative convenience has never been an adequate reason to keep evidence out of the prosecutor's hands."

*Id.* at 108.

In two other unreported District Court rulings, private party defendants subpoenaed transcripts of state unemployment compensation hearings, in an effort to defend against racial discrimination claims brought by former employees. In *Young v. Adams Business Forms, Inc.,* No. 87–4081–S (D.Kan. Jan.22, 1988), the court

denied the Kansas Employment Security Board of Review's motion to quash the defendant's subpoena seeking a transcript of the plaintiff's testimony at his unemployment benefits hearing. The Board based its motion upon a state statute that made such transcripts not discoverable or admissible in any other proceeding. Finding the state's motion unpersuasive, the court noted the absence of any "federal common law privilege regarding transcripts of state administrative proceedings." Likewise, in *Tutman v. WBBM–TV/CBS, Inc.*, No. 96 C4424 (N.D.Ill. Sept. 3, 1997), an Illinois District Court found the defendant entitled to a transcript of the plaintiff's unemployment compensation hearing, in part because the defendant, as the plaintiff's employer, "had the right to attend the initial hearing." Given this fact, the court reasoned: "The confidentiality of the unemployment proceedings are [sic] not designed to shield the employer from receiving any information provided at a hearing which it may attend. CBS is not asking for information that it would not otherwise have been privy to if it had chosen to attend the hearing. This is not a situation where a third party is seeking the information." Finally, in a third case, *Gallardo v. Bd. of County Commissioners*, 881 F.Supp. 525 (D.Kan.1995), the court denied the Kansas Department of Human Resources' motion to quash a subpoena requesting a transcript of unemployment insurance proceedings, relying upon *Young*

and *E.E O.C. v. Illinois Dept. of Employment Security*, 995 F.2d at 106.[1]

None of the foregoing rulings mesh neatly with the facts presently before the court. The current dispute does not involve a subpoena issued by federal prosecutors in a criminal case. Nor does the present case involve a subpoena issued by a federal agency, such as the EEOC, which, as the Seventh Circuit recognized in *E.E.O.C. v. Illinois Dept. of Employment Security*, 995 F.2d 106 (7th Cir.1993), has broad subpoena powers and pursues civil rights violations in much the same way that federal prosecutors pursue criminal convictions. In those cases, the federal government's paramount interest in upholding its criminal laws, or vindicating the civil rights of its citizens, transcended the state's interest in confidentiality. The present dispute also does not appear to involve an attempt by Grand Court to obtain a hearing transcript or other records containing information that it previously had a right to obtain. Grand Court advances no such argument; rather, it seeks access to any and all OBES files pertaining to Freed, without mentioning whether it previously had access to the information. Grand Court is particularly interested in any information Freed gave OBES when she applied to the agency for disability or unemployment benefits. It argues that such information is relevant, and should be disclosed, because it may bear upon Freed's claim that she is a "qualified individual with a disability" under the ADA or

---

1. Other courts have declined to recognize various state statutory privileges in federal litigation. Although not directly on point, these cases demonstrate the federal judiciary's disinclination to recognize such privileges. In *Sexton v. Poole Truck Lines, Inc.*, 888 F.Supp. 127 (M.D.Ala.1994), the court overruled a motion to quash a subpoena filed by the Alabama Department of Public Safety (ADPS), which claimed that its documents were privileged by a state statute. The plaintiff sought the documents as evidence that his former employer had retaliated against him for filing an ADA discrimination charge by urging the ADPS to suspend his commercial driver's license. After reviewing the records *in camera*, the court concluded that they were relevant to the

plaintiff's retaliation claim. *Id.* at 129. The court then found that the state's interest in protecting the confidentiality of information provided to the ADPS about commercial drivers did not outweigh the federal interest in protecting individuals who file EEOC charges from retaliation. *See also Robertson v. The Neuromedical Center*, 169 F.R.D. 80, 82–83 (M.D.La.1996) (finding a state statutory privilege for peer review committee records not sufficiently compelling to be incorporated into federal common law); *Blandin v. Marriott International, Inc.*, No. 4:96CV1130–DJS, 1997 WL 416465 (E.D.Mo. May 6, 1997) (declining to recognize as privileged, in an ADA discrimination case, certain state unemployment compensation benefits records).

lead to the discovery of other relevant evidence. (Doc. # 19 at 2–4).

■ In support, Grand Court cites *Griffith v. Wal–Mart Stores, Inc.*, 135 F.3d 376, 382 (6th Cir.1998), for the proposition that a plaintiff's statements on an application for disability benefits are relevant in an ADA lawsuit. In *Griffith,* the Sixth Circuit reasoned that when an individual professes an inability to work, in his application for disability benefits, that statement is relevant in a subsequent ADA lawsuit in which the individual must show that he was a qualified individual with a disability. Under the ADA, a "qualified individual with a disability" is one who can perform the essential functions of the job at issue, with or without reasonable accommodations. 42 U.S.C. § 12111(8). Consequently, a claim of total disability, although not dispositive, constitutes relevant evidence in a subsequent ADA lawsuit. *Id.* at 383.

In the present case, however, Grand Court seeks records and files from OBES, which administers Ohio's unemployment compensation system, not its disability benefits system, which is operated by the Ohio Bureau of Workers Compensation. Unemployment compensation is intended for individuals who possess the ability to work but cannot find employment. Disability compensation, on the other hand, assists those who lack the ability to work, regardless of available employment. The benefit an employer derives from an individual's disability records in ADA litigation is apparent. As the Sixth Circuit recognized in *Griffith,* a claim of disability, by its nature, is at odds with an individual's assertion that she is able to perform the essential functions of her job. Unemployment compensation records, however, would appear to be of less assistance to an employer defending against an ADA suit.

A claimant seeking unemployment benefits is able to work but cannot find employment. Presumably, then, such an individual would not allege a disability in an application to OBES for unemployment benefits. Consequently, the Court cannot agree that granting the Defendant access to "any and all" OBES files related to Freed is vital to Grand Court's defense. The Court also cannot say, however, without having reviewed the files in question, that none of the information Freed provided to OBES is relevant or that it would not lead to discoverable information.

■ After weighing the competing interests at stake in the present litigation, the Court finds Grand Court entitled to limited discovery from OBES. Specifically, the Court concludes that the Defendant's interest in obtaining any information Freed provided to OBES outweighs Ohio's interest in safeguarding the confidentiality of such information. Grand Court has not demonstrated a need to review *all* of OBES's files and records pertaining to Freed, however, particularly those records provided by other employers or potential employers. In opposition to OBES's Motion to Quash, Grand Court argues only the relevance of information that Freed herself provided to the state. (Doc. # 19 at 2–4). Consequently, the Court concludes that Grand Court is not entitled to review information other than that which Freed has ever provided to OBES.[2] Furthermore, in order to minimize the abrogation of Ohio Rev.Code § 4141.21, the Court will order OBES to provide the discoverable information under seal. This approach strikes a balance between protecting the state's confidentiality interests and enabling Grand Court to obtain potentially beneficial information. *Cf. In re Zuniga,* 714 F.2d 632, 639–640 (6th Cir.1983)

---

**2.** Grand Court is entitled to review any information Freed has ever provided to OBES. It is not limited to information related to her discharge from employment with Grand Court Lifestyles, Inc. Such information may assist Grand Court directly in its defense, or lead to the discovery of other relevant evidence, and the Court has recognized Ohio's weak interest in protecting the confidentiality of information provided by a claimant who subsequently initiates a discrimination lawsuit.

(recognizing that "the appropriate scope of a privilege, like the propriety of the privilege itself, is determined by balancing the interests protected by shielding the evidence sought with those advanced by disclosure").

In reaching the foregoing result, the Court does not dispute that OBES would have trouble operating its unemployment compensation system without the voluntary cooperation of employers, who provide the agency with records and files. The Court is less persuaded, however, by Ohio's interest in protecting the confidentiality of information provided by a claimant like Freed, who subsequently initiates a discrimination lawsuit against her former employer. As the Seventh Circuit recognized in *E.E.O.C. v. Illinois Dept. of Employment Security*, 995 F.2d at 108, "an employee with less to fear from calumny is more likely to claim benefits to which he is entitled, but secrecy also enables employees to bamboozle other employers by hiding the true reasons for their separations." *See also United States v. Wilson*, 960 F.2d at 50 (noting the state's "weak state interest" in protecting the confidentiality of its unemployment compensation records).

The Court also remains mindful that evidentiary privileges are strongly disfavored in federal practice and must be narrowly drawn because they "contravene the fundamental principle that 'the public ... has a right to every man's evidence.'" *University of Pennsylvania v. Equal Employment Opportunity Commission*, 493 U.S. 182, 189, 110 S.Ct. 577, 107 L.Ed.2d 571 (1990); *see also Jaffee*, 116 S.Ct. at 1928 ("When we come to examine the various claims of exemption, we start with the primary assumption that there is a general duty to give what testimony one is capable of giving, and that any exemptions which may exist are distinctly exceptional, being so many derogations from a positive general rule."); *In re Zuniga*, 714 F.2d at 638 (quoting *United States v. Nixon*, 418 U.S. 683, 711, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974), and recognizing that " 'exceptions to the demand for every man's evidence are not lightly created nor expansively construed for they are in derogation of the search for the truth' "). At the same time, comity favors recognizing a state law privilege, as a component of federal common law, to the extent that doing so will not impose a substantial cost on federal policies. *Memorial Hospital for McHenry County v. Shadur*, 664 F.2d 1058, 1061 (7th Cir.1981); *Farley v. Farley*, 952 F.Supp. 1232, 1237 (M.D.Tenn.1997) ("Principles of federalism and comity dictate that, should a federal Court depart from a state law privilege in concluding that discovery may proceed, some deference (and in certain cases a great deal of deference) must be given to the state interests underlying the privilege."). In the present case, providing access to OBES's records, to the extent described above, serves Grand Court's interest in obtaining relevant information, while infringing as little as possible upon Ohio's interest in preserving the confidentiality of its unemployment compensation records.

### III. *Conclusion*

The Administrator of the Ohio Bureau of Employment Services' Motion to Quash Subpoena/Motion for Protective Order (Doc. # 18) is SUSTAINED in part and OVERRULED in part. To the extent the Defendant seeks to discover information other than that which the Plaintiff personally provided to OBES, the Administrator's Motion is Sustained. To the extent the Defendant seeks to discover information that the Plaintiff personally has ever provided to OBES, however, the Administrator's Motion is Overruled. The Administrator is ordered to provide the Defendant with any information it has received from Plaintiff Joanne Freed. Such information shall be considered confidential, and shall be disclosed under seal, subject to inspection only by: (1) the parties to this litigation or their agents; and (2)

counsel for the parties to this litigation, including their support staffs.